36 179
36 706

## CHARLESTON.

STATE *v.* MOUNTS.

Submitted January 21, 1892.—Decided February 15, 1892.

1. CONSTITUTIONAL LAW.

> The act of the legislature passed on the 27th day of February, 1891 (Acts 1891, c. 42) in relation to petit juries, and embraced in the Code as chapter 116, p. 773, is not in violation of the constitution of this State, but is a valid and constitutional act.

2. CONSTITUTIONAL LAW.

> The thirtieth section of article VI, of the constitution of this State concludes in the following language: "And no act of the legislature, except such as may be passed at the first session under this constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two thirds of the members elected to each house taken by yeas

and nays otherwise direct." *Held*, that the word "passage" in this section relates to the date of the passage of the act by the two houses, and not to the date of its approval by the governor; and that, the act in question having passed both houses on the 27th of February, 1891, went into effect on the 28th day of May following.

3. CONSTITUTIONAL LAW—GOVERNOR.

Article V. of the constitution of this State provides that "the legislative, executive, and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature." It follows from this section that the governor has no legislative functions to perform, and his approval of an act of the legislature, which is to take effect not at its passage, but after the expiration of ninety days from its passage, relates back to the date of passage by the legislature.

4. CONSTITUTIONAL LAW.

In computing the ninety days required by the constitution, it is immaterial whether we count the day of passage and reject the ninetieth day, or whether we include the ninetieth day and exclude the day of the passage of the act. An act passed on the 27th day of February, 1891, will, under said constitutional provision, take effect on the 28th day of May, 1891.

5. CONSTRUCTION OF STATUTES—JURY COMMISSIONERS—OFFICE—TERM OF OFFICE.

The jury act under consideration prescribes that the jury commissioners shall be appointed by the Circuit Court, or the judge thereof in vacation, and that "their term of office shall be four years, and shall commence on the 1st day of June next after their appointment," *etc*. *Held*, that an appointment made by a circuit judge under this law on the 1st day of June, 1891, conferred upon the appointee the office of jury commissioner, and that his term of office commenced on the 1st day of June, 1891.

*W. W. Adams* for appellant cited Const. Art. VI, secs. 30, 40; Id. Art. VII, secs. 8, 14, 15; 6 Wall. 502; 104 U. S. 479; 1 Cal. 408; 20 Vt. 654; 18 Ind. 24; 15 Wis. 156; 3 Heisk. 442; U. S. Const. Art. I, sec. 7, cl. 2; Cool. Const. Lim. 188, 189; Id. 89; Id. 105; Id. 220; Suth. Stat. Constr. § 104; Sedg. Stat. Const. Law 67; 2 Sto. 580; 19 W. Va. 67; Const. Art. IV, sec. 8; Id. Art. VIII, sec. 1; 6 W. Va. 577; 6 Wis. 605; 11 Wis. 50; 26 Ala. 165; 3 Gray 476; 35 Barb. 264; 14 Mich. 276; 18 Ia. 261; 10 Bosw. 366; 7 Col. 230; 13 Oreg. 17; 118 U. S. 425, 441—

446; 1 J. J. Marsh. 206; 10 Mich. 250; 22 W. Va. 671; 24 Wend. 540, 541; 25 Ia. 11.

*Attorney-General Alfred Caldwell* for the State cited Acts 1891, c. 42; Cool. Const. Lim. (6th Ed.) 187; Id. 750–75; 1 Lev. 91; 4 T. R. 660; Mart. (N. C.) 26; 5 Jones L. 36; 33 Geo. III, c. 13; Const. Art. VI, secs. 30, 31; Id. Art. VII, secs. 14, 15; 12 R. I. 310; 104 Ind. 97; 37 La. Ann. 788; 29 Pa. St. 129; 3 Brev. 516; 24 Kans. 618; 57 Wis. 110; 56 Pa. St. 436; 7 Col. 285; 18 Fla. 557; 17 Tex. App. 76; 61 Wis. 211; 34 Ark. 263; 3 Utah 334; 56 Cal. 83; 1 Dak. Ter. 308; 105 Mass. 185; 60 Wis. 133; 1 Idaho (N. S.) 349; 94 Ill. 214; 47 N. Y. 330; 97 Ill. 234; 32 Ind. 313; 14 Mo. 283; 27 Wis. 406; 43 Ala. 598; 33 Ga. 344; Code c. 39, s. 29; 34 W. Va. 207; Const. Art. XI, sec 40; 19 W. Va. 67; Code 105, s. 4; Const. Art. XIII, sec. 4; Code 1063; Code, c. 4, s. 10; 114 Mass. 249–251; 122 Ill. 420; 62 Wis. 154; 10 Mich. 250; 9 Mass. 231; 21 Ohio St. 610; 38 Conn. 449; 36 Conn. 432; 3 Head. 690; 16 Pet. 71.

LUCAS, PRESIDENT:

This was a prosecution in the Circuit Court of Logan county for a detestable and abominable crime against nature. The jury found the prisoner guilty, and the Circuit Court sentenced him to three years' confinement in the penitentiary.

Upon the trial there was reserved for him the following bill of exceptions: "*The State of West Virginia* v. *Bud Mounts*, Indictment for buggery.

Be it remembered, that upon the calling of this case the court proceeded to have a jury selected for the trial of the prisoner from the jurors who had been selected and drawn by the jury commissioners of this county under the present jury law of this State, and the prisoner objected thereto, and moved to quash the array of jurors, (1) because of the unconstitutionality of said jury law; (2) because the term of office of the jury commissioners of this (Logan) county does not begin until the first day of next June, (1892;) (3) because said jury law had not gone into operation until after the time at which the jury commissioners of this coun-

ty were appointed. And in support of his objection and motion the prisoner introduced the record, to wit :

'In vacation. By virtue of and in pursuance to chapter 116 of the Code of West Virginia, as amended and re-en-acted by chapter 42 of the acts of the legislature of 1891, I, Thos. H. Harvey, judge of the Circuit Court of Logan county, do hereby constitute and appoint H. S. White and Dr. M. F. French as the two jury commissioners of the Circuit Court for Logan county; the said H. S. White to serve for the period of four years, and the said M. F. French for the period of two years. And the clerk of said Circuit Court is hereby directed to enter this order in' the law or-der-book of said court, and to cause the said parties to be at once notified of their appointment.

'Done in vacation, this 1st day of June, 1891.

Thos. H. Harvey.

'A copy.

Teste :      T. C. Whited, Clerk.'

And proved to the court that the jury commissioners of this county who selected said jurors were not appointed un-til the 1st day of June, 1891. But the court overruled the objection of the prisoner and overruled also his said motion, to all of which action of the court the prisoner excepted, and the court proceeded to have the jury selected, and, when the jury was selected to try this cause, the prisoner objected to said jury, and moved to quash the panel, and discharge the jury, for the reasons aforesaid; which objec-tion and motion the court overruled, and proceeded to try the case, to all which the said prisoner excepted, and ten-dered this, his bill of exceptions; and the court proceeded with the trial of the case, and the jury rendered a verdict of guilty. of buggery, as charged in the indictment against said prisoner; and the prisoner then moved the court to set aside said verdict, and grant him a new trial, which motion the court overruled, to which ruling the prisoner excepted.

And this bill of exceptions is accordingly signed, sealed, and made a part of the record in this cause this ——— day of October, 1891.

Thos H. Harvey."

The only section of the jury act passed February 27, 1891,

which it will be necessary to quote in this connection is the third (see Code 1891, c. 116, p. 773) as follows:

"(3) There shall be two jury commissioners of the Circuit Court for each county. They shall be of opposite politics, citizens of good standing, resident in the county for which they are appointed, and well-known members of the principal political parties thereof. They shall be appointed by the circuit court, or the judge thereof in vacation, of their respective counties. Their term of office shall be four years, and shall commence on the first day of June next after their appointment; but the first two shall be appointed—one for two years, and the other for four years—and thereafter, alternately, for the full term of four years. They may be removed from office by the court or judge having the power of appointment, for official misconduct, incompetency, habitual drunkenness, neglect of duty, or gross immorality. Vacancies caused by death, resignation, or otherwise shall be filled for the unexpired term in the same manner as the original appointments. The jury commissioners shall keep in a well-bound book a record of the proceedings, to be preserved by the clerk of the Circuit Court in his office. They shall receive two dollars per day for each day necessarily employed as such jury commissioners, payable out of the county treasury, upon the order of the Circuit Court. The first appointment of said commissioners shall be made within thirty days after this act takes effect. The jury commissioners of each county shall, at the levy term of the County Court thereof annually, and at any other time when required by the Circuit Court of such county, without reference to party affiliations, prepare a list of such inhabitants of the county, not exempted as aforesaid, as they shall think well qualified to serve as jurors, being persons of sound judgment, and free from legal exception, which list shall include at least twenty persons for every thousand inhabitants in such county, but in no case shall such list include a less number than one hundred persons. But the name of no person shall be put on such list who may have requested the jury commissioner, or either of them, by himself or another person, to have his name placed on such list," *etc.*

It is first objected against this law that it is unconstitu-

tional, in that it confers upon the courts or judges of the
state the power of appointing officers, and to sustain this
position the eighth section of the seventh article is relied
upon.    That section reads as follows:

"The govenor shall nominate, and by and with the ad-
vice and consent of the senate (a majority of all the sena-
tors elected concurring by yeas and nays) appoint all offi-
cers whose offices are established by this constitution or
shall be created by law, and whose appointment or election
is not otherwise provided for, and no such officers shall be
appointed or elected by the legislature."

Again, the fortieth section of the sixth article provides
as follows:

"The legislature shall not confer upon any court or
judge the power of appointment to office further than the
same is herein provided for."

Again it is provided in the eighth section of the eighth
article, as follows:

"The legislature, in cases not provided for in this constitu-
tion, shall prescribe by general laws the terms of office,
powers, duties and compensation of all public officers and
agents, and the manner in which they shall be elected, ap-
pointed and removed."

The question here presented is, whether the jury com-
missioners created by the act now under consideration are
officers of the state, or whether they are in fact, like jurors
themselves, mere · officers of the court, such as commis-
sioners in chancery, and, in a general sense, attorneys.
We think there can be no doubt that such commissioners
belong to the latter class, and go to make up a part of the
judicial machinery, such as commissioners in chancery,
general and special receivers, and other similar officers.
Jurors are themselves, in a certain sense, officers of the
court; and this special commission is only a legislative de-
vice intended to aid the court in selecting them.    Special
commissioners, referees, appraisers, receivers and other
similar officers, appointed for a special purpose, and to act
on a special occasion, are not public state officers.    Mechem,
Pub. Off. § 57. ·

In this case the prisoner challenged the array before the

jury was sworn, and it is claimed that the twelve men who sat upon his trial did not constitute a legal jury; the law under which they were selected not having been complied with, and all other laws upon the subject having been expressly repealed.

The present appointment of jury commissioners was made upon the 1st day of June, 1891. The act was passed by the legislature on the 27th day of February, 1891, but did not receive the approval of the governor until the 4th day of March following. The constitution prescibes, in section 30, Art. VI: "No act of the legislature except such as may be passed at the first session under this constitution shall take effect until the expiration of ninety days after its passage, unless the legislature shall, by a vote of two thirds of the members elected to each house, taken by yeas and nays, otherwise direct."

It is claimed that the word "passage" here means the final act of approval by the governor, superadded to the affirmative vote of the two houses, which, in this case, would make the law go into effect at the expiration of ninety days from the 4th of March, when it was approved, instead of at the expiration of ninety days from the 27th of February, when it was passed by the two houses. Many authorities are quoted to sustain this position.

There can be no doubt that the Supreme Court of the United States has decided in several elaborate and well-matured decisions that no law of congress can take effect or become a law until approved by the president, or passed over his veto. In the former case, the law takes effect from date of his approval, and in the latter, from the date of its passage over his veto. Under the constitution of the United States these decisions could not have held otherwise, because the second paragraph of the seventh section of the first article provides that every bill which shall have passed the house of representatives shall, before it become a law, be presented to the president of the United States. If he approve, he shall sign it; but if he disapprove it can only become a law by a vote of two thirds of each house. It will thus be seen that the constitution of the United States creates in the president a function somewhat legis-

lative in its character, in analogy to the constitution of England, under which the king was recognized, according to the elementary writers, as a constituent branch of the parliament itself. 1 Bl. Comm. 184n.

Under the constitution of this State, however, the three departments—legislative, executive, and judicial—are required to be "separate and distinct, so that neither shall exercise the powers properly belonging to either of the others." See article 5, § 1. The governor has no legislative functions to perform. His approval of the law passed by the legislature does, it is true, give it vitality as a law; but, should he decline to approve, a bare majority in each of the two houses may pass the law over his veto, thus showing that it was not intended that he should have any legislative power, not even the casting vote. His veto amounts to an appeal for "reconsideration" by the legislative branch, and not to a defeasance of the passage of the bill.

Our constitution carefully distinguishes in its phraseology between the "passage" of a law and its "approval" by the governor. It nowhere confounds these terms. Thus, for example, in article VI it is provided :

"(28) Bills and resolutions may originate in either house, but may be passed, amended, or rejected by the other."

"(29) No bill shall become a law until it has been fully and distinctly read on three different days," etc.

"(30) No act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But, if any object shall be embraced in the title and act which is not so expressed, the act shall be void," * * *. "And no act of the legislature except such as may be passed at the first session under this constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall, by vote of two thirds of the members elected to each house, taken by yeas and nays, otherwise direct.

"(31) When a bill or joint resolution passed by one house shall be amended by the other, the question on agreeing to the bill or joint resolution, as amended, shall be again voted on by yeas and nays in the house by which it was

originally passed, and the result entered upon its journals. In all such cases the affirmative vote of a majority of all the members elected to such house shall be necessary."

Now, it will be observed that the words "passed" and "passage" in all four of these contiguous sections refer exclusively to the action of legislature and its two branches, and have no relation whatever to the approval of the law by the governor. The functions of the governor, so far as they affect legislation, are contained in an entirely different article, viz., in article VII, which is appropriated to the "executive department."—"Every bill passed by the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law ; but, if not, he shall return it, with his objections, to the house in which it originated, which house shall enter his objection at large upon its journal, and proceed to reconsider it. If, after such reconsideration, a majority of the members elected to that house agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be considered, and, if approved by a majority of the members elected to that house, it shall become a law, notwithstanding the objections of the governor."

I interpret this action of the governor to be deliberative, but not legislative; and where the constitution expressly declares that, unless otherwise provided by the legislature in the act itself, every act shall go into effect at the expiration of ninety days from its passage, the approval of the governor relates back to the passage of the act, and the period of ninety days is computed from that time. Where the legislature in the act itself declares that the law shall take effect from and after its passage, the question becomes one not of constitutional construction at all, but of legislative intent; and where there is no indication that the legislature meant otherwise it would doubtless be a fair inference that the legislature intended the act to take effect from the date of its approval by the governor, and that such approval should not relate back to the day of its passage.

In fine, we hold that the signature of the governor was not intended by the constitution to be legislative in its

character, and that in general, where an act takes effect at the expiration of ninety days after its passage, as prescribed in section 30, Art. VI, of the constitution, the approval on the part of the governor by relation takes effect from the conclusion of the proceeding which was legislative. In this respect we are governed by those authorities which, under the constitution of certain States, Tennessee for example, require each act to be signed by the respective speakers before it becomes a law. See *Lewis* v. *Woodfolk*, 2 Baxt. 25.

In that case it was held that the signing by the speaker, though essential to the validity of the act, related back to the date of its passage, and gave the law validity from that date. We think the analogy in that case, and the reasoning, more applicable to our own constitution and its interpretation than the cases cited from the Supreme Court of the United States. See *Gardner* v. *Collector*, 6 Wall. 502; *Louisville* v. *Savings Bank*, 104 U. S. 479.

If this conclusion be correct, then the proper mode of computing the time is to exclude the day of the passage of the act, and to include the ninetieth day thereafter. This is the rule as laid down by Mr. Sutherland: "The rule now supported by nearly all the modern cases is that the time shall be computed by excluding the day, or the day of the event, from which the time is to be computed, and including the last day of the number constituting the specified period. Thus, if an act is to take effect in thirty days from and after its passage, passing on the 1st day of March, it would go into operation on the 31st day of that month. It would commence to operate at the first moment of the last day of the thirty ascertained by adding that number to the number of the date of the passage." Suth. St. Const. § 111.

Mr. Sutherland adds, however, in the next section: "The rule is not so absolute, however, but that the day of the act done may be included where it is necessary to give effect to the obvious intention; and some cases assert it will be included or excluded as occasion may require to prevent an estoppel or save a forfeiture." Id. § 112.

It will be observed, moreover, that in computing the

time, within which or after the expiration of which an act of the legislature is to take effect, it is quite immaterial whether you include the day of the passage of the act, and exclude the ninetieth day, or whether you exclude the day of the passage, and include the ninetieth; the date of commencement of the efficacy of the law will be precisely the same.

Thus, to take Mr. Sutherland's own illustration of a law passed on the 1st day of March, which is to take effect in thirty days from and after its passage, if we include the 1st day of March, which is the day of passage, and exclude the 30th day, the act will go into operation on the 31st day of March; but if we exclude the 1st day of March, and include the thirtieth day, the act still takes effect on the thirty first day of March. In the present case, the act having been passed on the 27th day of February, whichever alternative mode of computation we may adopt, it went into effect on the 28th day of May, 1891.

The act further declares that the term of office of the jury commissioners "shall commence on the 1st day of June next after their appointment." There can be no doubt, therefore, that all those commissioners that were appointed on the 28th day of May, or the 29th or 30th or 31st of that month, if the appointments were duly made in conformity with the law, were clothed with a term commencing on the 1st day of June, 1891.

But what shall we say as to those appointments which were made on the 1st day of June, 1891, or after that period? Let us consider the first proposition. The fiction of law by which fractions of a day are not recognized is not of universal application. Upon this subject Mr. Sutherland says: "The maxim that the law takes no notice of the fractions of a day is not of universal application. The legal quality of an act may depend on where it was done with reference to other acts or events occurring not merely on the same day, but in the same hour. Instances in great variety will at once occur to the professional mind. The sequence of such related facts may always be inquired into unless the inquiry under consideration is an exception." Suth. St. Const. § 110.

In *Combe* v. *Pitt*, 3 Burrows, 1423, Lord Mansfield said: "Though the law does not in general allow of the fractions of a day, yet it admits it in cases where it is necessary to distinguish; and I do not see why the very hour may not be so, too, where it is necessary to be done."

So, in the case of *Louisville* v. *Savings Bank*, 104 U. S. 469, it was held: "When necessary to determine conflicting rights courts of justice will take cognizance of the fractions of a day." In that case the Supreme Court of the United States held that, in order to prevent a forfeiture, they could consider the exact point of time when an amendment to a State constitution took effect, and located it at the hour when the polls closed on the day of its adoption by the people.

The proof in the present case is that the jury commissioners for the county of Logan, in which the prisoner was tried, "were not appointed until the 1st day of June, 1891." Dividing this day into fractions, as we are at liberty to do, if the appointment were made in the forenoon of the day named, viz., the 1st day of June, the term of office of the commissioners would commence on the same day, and would commence after their appointment, and the term of their office could appropriately be said to have commenced on the 1st day of June next after (the hour of) their appointment.

We think, therefore, that if the prisoner desired to prove that the term of an appointment on the first day of June, 1891, did not commence on that day, he should have gone further and proved, that when the appointment was completed, there was no fraction of that day left unexpired within which the term of service might commence.

But, even if this view were not correct, all the best authorities hold that the words "from" and "after" may be construed to include or exclude the day of the act, as will best serve to carry out the intention of the legislature, subserve public policy, avoid forfeiture, and validate a proceeding, rather than to annul the same. See *Arnold* v. *U. S.*, 9 Cranch, 119; *Pearpoint* v. *Graham*, 4 Wash. C. C. 240; 1 Rob. Pr. (New) 424, and authorities there cited; and Suth. St. Const. § 112.

Regarding the day, therefore, of the 1st of June as the day upon which the act of appointment was made, we may regard the appointment as including the whole of that day from its earliest moment, and therefore the term of service would commence on that day. So that, without straining the language of the act beyond what is usual and proper to make it efficient and valid, we may conclude that the term of service of the commissioners for Logan county commenced on the 1st day of June, 1891, and will terminate at such period as the statute prescribes.

Upon the whole, therefore, we find no error in the action of the Circuit Court, and the same must be affirmed.

AFFIRMED.