573 S.E.2d 347

**CITY OF BENWOOD, A Municipal Corporation, and Frank Longwell, Larry Ferrara, William Kern, Individually and on Behalf of Save Our School/Union Defense Fund, Plaintiffs Below, Appellants,**

v.

**The BOARD OF EDUCATION OF THE COUNTY OF MARSHALL, A Corporation, David L. Wood, in His Official Capacity as the Superintendent of the Board of Education of the County of Marshall, John H. Och, IV, Roger A. Lewicki, Mary Ellen Komorowski, Melanie A Hummel, and George M. Manning, Each in His or Her Official Capacity as a Member of the Board of Education of the County of Marshall, a Corporation, Defendants Below, Appellees.**

No. 30627.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 4, 2002.

Decided Nov. 1, 2002.

Daniel J. Guida, Esq., Guida Law Offices, Weirton, West Virginia, Attorney for Appellants.

Gregory W. Bailey, Esq., Kimberly S. Croyle, Esq., Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorneys for Appellees.

Michael R. Crane, Esq., M.E. "Mike" Mowery, Esq., Mark W. McOwen, Esq., for Amici Curiae, Earl Ray Tomblin, President of the West Virginia Senate and Robert S. Kiss, Speaker of the West Virginia House of Delegates.

PER CURIAM:

This case is before this Court upon an appeal of a final order of the Circuit Court of Marshall County entered on May 8, 2002. In that order, the circuit court denied a petition for a writ of mandamus and a request for declaratory and injunctive relief filed by the appellants and plaintiffs below, the City of Benwood, a municipal corporation, and Frank Longwell, Larry Ferrara, and William Kern, individually and on behalf of Save Our School/Union Defense Fund, against the Board of Education of the County of Marshall (hereinafter "the Board") to prevent the closing of Union Junior High School. In this appeal, the appellants contend that the circuit court erred by ruling that the Board was not required to comply with the amendments to W.Va.Code § 18–5–13a adopted through House Bill 4149 during the 2002 regular session of the West Virginia Legislature. The appellants also assert several additional errors concerning the procedure followed by the Board to close Union Junior High School.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel.[1] As set forth below, we

---

1. At this juncture, we wish to note the appearance of amici curiae, Earl Ray Tomblin, Presi-

find that the circuit court erred by ruling that W.Va.Code § 18-5-13a (2002) did not become effective until April 3, 2002, and therefore, was not applicable to the Board's actions.[2] However, we affirm the circuit court's final order because we believe the Board complied with the statute's requirements.

## I.

### FACTS

On January 15, 2002, the Board decided by a vote of 3-2 to proceed with public hearings regarding the closing of Limestone Elementary School and Union Junior High School. The Board's proposal indicated that the students of Union Junior High School would be sent to Sherrard Junior High School while the students from Limestone Elementary School would be divided among Glen Dale Elementary School, Sanford Elementary School, and Sherrard Elementary School. The Board also proposed that students in the ninth grade at Moundsville Junior High, Sherrard Junior High, and Union Junior High be sent to John Marshall High School. On February 4, 2002, at a special meeting, the Board established publication dates and notices mandated by W.Va.Code § 18-5-13a (1991). At its regular meeting on February 12, 2002, the Board scheduled a special meeting for March 25, 2002, for a final decision and vote on its proposals.

A public hearing was held on March 20, 2002, to discuss the proposed closing of Union Junior High School. Public hearings were also held on March 19, 2002, to discuss the reassignment of ninth graders to John Marshall High School, and on March 21, 2002, to discuss the closure of Limestone Elementary School. A few days later, on March 25, 2002, the Board voted 3-2 to close Union Junior High School at the end of the

2001-2002 school year.[3] The Board also voted 3-2 to reassign ninth graders from Moundsville Junior High, Sherrard Junior High, and Union Junior High to John Marshall High School. The motion to close Limestone Elementary School failed.

On April 30, 2002, the circuit court held a hearing on the appellants' petition for writ of mandamus and request for declaratory and injunctive relief. On May 7, 2002, the court entered an order finding that the Board had complied with W.Va.Code § 18-5-13a (1991) and denying the appellants the relief they sought. Thereafter, the appellants discovered that W.Va.Code § 18-5-13a was amended during the 2002 session of the West Virginia Legislature. Consequently, on May 13, 2002, the appellants filed a motion with the circuit court requesting that the court make additional findings with regard to the applicability of the amendments to the Board's actions. The appellants also filed motions for a new trial, amendment of judgment and/or relief from judgment. By order dated May 24, 2002, the circuit court denied these motions. This appeal followed.

## II.

### STANDARD OF REVIEW

 As set forth above, this appeal concerns the circuit court's decision to deny the appellants a writ of mandamus based upon its finding that the Board complied with W.Va.Code § 18-5-13a. While school boards have the authority to close and/or consolidate schools, "a writ of mandamus is appropriate when a [school] board oversteps, or fails to meet, its clear legal duties." *McComas v. Board of Educ. of Fayette County*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996). In Syllabus Point 1 of *Pell v. Board of Educ. of*

---

dent of the West Virginia Senate, and Robert S. Kiss, Speaker of the West Virginia House of Delegates, in this proceeding. We appreciate their participation in this case, and we have considered their arguments in conjunction with those of the appellants, whose position they support.

**2.** As discussed herein, W.Va.Code § 18-5-13a sets forth the procedure school boards must fol-

low before making a final decision to close or consolidate a school. House Bill 4149 rewrote the entire section.

**3.** By order dated June 6, 2002, this Court granted a motion filed by the appellants and stayed the closing of Union Junior High School pending the resolution of this appeal.

*Monroe County,* 188 W.Va. 718, 426 S.E.2d 510 (1992), this Court held that:

> "Mandamus will lie to control a board of education in the exercise of its discretion upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of the law." Syl. pt. 4, *Dillon v. Board of Education,* 177 W.Va. 145, 351 S.E.2d 58 (1986).

In reviewing a circuit court's decision to grant or deny a writ of mandamus, this Court applies a *de novo* standard of review. *McComas,* 197 W.Va. at 193, 475 S.E.2d at 285. Of course, a clearly erroneous standard applies to the circuit court's underlying factual findings. *Id.*

■ We also note that one of the primary issues in this case involves interpretation of the West Virginia Constitution and relevant statutes. "Because interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a *de novo* review[.]" *Phillip Leon M. v. Greenbrier County Bd. of Educ.,* 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996). With these standards in mind, we now address the parties' arguments.

## III.

## DISCUSSION

### A. The Applicability of House Bill 4149

The appellants first contend that W.Va. Code § 18–5–13a as amended by House Bill 4149 during the 2002 Legislative session applied to the Board's actions with respect to the closing of Union Junior High School. The appellants contend that since House Bill 4149 contained language stating that it was "effective from passage," the amendments took effect on March 8, 2002, when the bill was passed by both houses of the Legislature. In support of their argument, the appellants point to Article VI, Section 30 of the West Virginia Constitution, which provides, in pertinent part: "[N]o act of the legislature ... shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two-thirds of the members elected to each house, taken by yeas and nays, otherwise direct." The appellants contend that the term "passage" in Article VI, Section 30 refers to the date when the bill has passed both houses of the Legislature. In other words, the appellants aver that when a bill is made "effective from passage," it is effective from the date the affirmative vote was taken by the Legislature and not from the date of the governor's signature.

The Board argues, however, that House Bill 4149 did not become effective until April 4, 2002, when it was signed by the Governor, or at least March 27, 2002, the date the bill was presented to the Governor for his signature. Thus, the Board maintains W.Va.Code § 18–5–13a as amended did not apply to the closing of Union Junior High School. The Board reasons that since the executive branch of our government is charged with enforcing the laws passed by the Legislature pursuant to Section 5 of Article VII of the West Virginia Constitution, a bill cannot become enforceable law until it is presented to the Governor. The Board claims that such a view is consistent with Article VII, Section 14 of the West Virginia Constitution which requires that "every bill passed by the legislature shall, before it becomes a law, be presented to the Governor."

■ The circuit court adopted the Board's reasoning and concluded that, "Had [the Board] complied with H.B. 4149, in doing so, it would have been improperly and precariously anticipating the action of the Governor of the State of West Virginia." In essence, the circuit court ruled that Article VII, Section 14 prevents the Legislature from making a bill effective on any date earlier than the date upon which the Governor signs the bill. While this may in fact be the rule in other jurisdictions, this Court has long since held that the effective date of legislation is established by the Legislature and not the Governor.

In *State v. Mounts,* 36 W.Va. 179, 185–86, 14 S.E. 407, 409 (1891), this Court observed that:

> [T]he constitution of the United States creates in the president a function somewhat legislative in its character, in analogy to the constitution of England, under which

the king was recognized, according to the elementary writers, as a constituent branch of the parliament itself. 1 Bl. Comm. 184*n*. Under the constitution of this state, however, the three departments—legislative, executive, and judicial—are required to be "separate and distinct, so that neither shall exercise the powers properly belonging to either of the others." See article 5, § 1. The governor has no legislative functions to perform. His approval of the law passed by the legislature does, it is true, give it vitality as a law; but, should he decline to approve, a bare majority in each of the two houses may pass the law over his veto, thus showing that it was not intended that he should have any legislative power, not even the casting vote. His veto amounts to an appeal for "reconsideration" by the legislative branch, and not to a defeasance of the passage of the bill. Our constitution carefully distinguishes in its phraseology between the "passage" of a law and its "approval" by the governor. It nowhere confounds these terms.

■ This Court further explained in *Mounts* that the functions of the Governor with respect to legislation as set forth in Article VII of the West Virginia Constitution are

> deliberative, but not legislative; and where the constitution expressly declares that, unless otherwise provided by the legislature in the act itself, every act shall go into effect at the expiration of 90 days from its passage, the approval of the governor relates back to the passage of the act, and the period of 90 days is computed from that time.

36 W.Va. at 187, 14 S.E. at 409. In other words,

> the signature of the governor was not intended by the constitution to be legislative in its character, and that in general, where an act takes effect at the expiration of 90 days after its passage, as prescribed in section 30, art. 6, of the constitution, the approval on the part of the governor by relation takes effect from the conclusion of the proceeding which was legislative.

36 W.Va. at 187–88, 14 S.E. at 409. Accordingly, this Court held in Syllabus Point 2, in part, of *Mounts:*

> The thirtieth section of article 6 of the constitution of this state concludes in the following language: "And no act of the legislature, except such as may be passed at the first session under this constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall, by a vote of two-thirds of the members elected to each house, taken by yeas and nays, otherwise direct." . . . [T]he word "passage" in [Section 30 of Article VI of the West Virginia Constitution] relates to the date of the passage of the act by the two houses, and not to the date of its approval by the governor[.]

In summary, the jurisprudence of this State with respect to the functions of the legislative and executive branches of government relating to the establishment of the effective dates of acts of the Legislature is well-settled. Simply put, for more than a hundred years this Court has held that the effective dates of legislation are determined by the Legislature and not the Governor. In examining the facts and issues presented by this case, we have found no compelling reason to hold otherwise. Therefore, we find that the circuit court erred to the extent that it ruled that a bill made "effective from passage" does not take effect until the date it is signed by the Governor. Clearly, W.Va.Code § 18–5–13a (2002) became effective on March 8, 2002, the date House Bill 4149 was passed by both houses of the Legislature.

### B. Compliance with W.Va.Code § 18–5–13a

■ Having established that W.Va.Code § 18–5–13a (2002) became effective on March 8, 2002, we now consider whether the Board complied with the statute's requirements. In doing so, we also address the appellants' remaining assignments of error. Although the appellants have enumerated several assignments of error, apart from the issue discussed above, they basically assert that the Board did not comply with the statute's requirements. In making that assertion, the appellants contend that the standard for determining whether the Board fulfilled the

requirements of W.Va.Code § 18–5–13a is "strict compliance."

Recognizing that "county boards of education have the authority to close or consolidate county schools, and a decision in that regard is a matter within the sound discretion of the [county] board of education," *State ex rel. Jones v. Board of Educ. of Ritchie County*, 178 W.Va. 378, 380, 359 S.E.2d 606, 608 (1987), the appellants argue that once a decision to close a school has been made, the board of education must strictly comply with provisions of W.Va.Code § 18–5–13a. In other words, the appellants contend that the Board lacks discretion with respect to following the mandates of that statute.

 We agree with the appellants in that the provisions set forth in W.Va.Code § 18–5–13a (2002) are mandatory. W.Va.Code § 18–5–13a specifically provides that

(a) In addition to the provisions of section thirteen [§ 18–5–13] of this article, prior to any final decision of a county board on any proposal to close or consolidate any school, except in cases in which a construction bond issue was passed by the voters and which bond issue included the schools to be closed or consolidated, the county board *shall:*

(1) Prepare and reduce to writings its reasons and supporting data regarding·the school closing or consolidation. The written reasons *shall:*

. . . .

(2) Provide notice for a public hearing. The notice *shall* be advertised . . . .

(3) Conduct a public hearing which meets the following criteria:

. . . .

(4) Receive findings and recommendations from any local school improvement council . . . .

(Emphasis added). Clearly, "[c]ounty boards of education do not have unlimited power to make the final decisions with respect to school closings and consolidations. The plain language of W.Va.Code, 18–5–13 (1990) [4] and W.Va.Code, 18–5–13a reflects that such decisions may be rejected where they fail to comply with statutory provisions or West Virginia Board of Education regulations." Syllabus Point 1, *Board of Educ. of the County of Kanawha v. West Virginia Bd. of Educ.*, 184 W.Va. 1, 399 S.E.2d 31 (1990) (footnote added). For example, in *McComas, supra*, the Fayette County Board of Education's decision to close one of its high schools was rejected because proper notice was not given pursuant to the provisions of W.Va.Code § 18–5–13a.

In *McComas*, the circuit court granted a writ of mandamus to citizens of Fayette County when they challenged their county board of education's decision to close one of the county's high schools. The citizens claimed, *inter alia*, that the board of education failed to post notices of the Board's proposal pursuant to W.Va.Code § 18–5–13a at the high school that would be receiving the students from the closed school. Under W.Va.Code § 18–5–13a (1991), a school board is required to post a copy of the same notice published in the newspaper in conspicuous places in the "affected schools" for the benefit of the employees. The citizens argued that the high school that would be receiving the students from the closed school was an "affected school" under the statute.

Ultimately, this Court determined that "all schools that are the objects of consolidation whether 'giving' or 'receiving' schools can qualify as affected schools within the meaning of W.Va.Code, 18–5–13a." *McComas*, 197 W.Va. at 206, 475 S.E.2d at 298 (footnote omitted). Thus, this Court affirmed the circuit court's decision to grant a writ of mandamus to the citizens of Fayette County because the board of education had not complied with the requirements of W.Va.Code § 18–5–13a.[5] Our decision in *McComas* il-

---

4. W.Va.Code § 18–5–13 provides that:

The [school] boards, subject to the provisions of this chapter and the rules of the state board, have authority:

. . . .

(3) To close any school which is unnecessary and to assign the pupils of the school to other schools . . .

(4) To consolidate schools[.]

5. This Court also determined in *McComas* that the county board of education violated the Open

lustrates that strict compliance is the standard for determining whether a board of education has fulfilled the requirements of W.Va.Code § 18–5–13a.

The case at bar, however, presents a unique situation, in that while the Board was taking the necessary steps to close Union Junior High School, W.Va.Code § 18–5–13a was amended. Recognizing the possibility that certain boards of education might be in the process of closing or consolidating schools, the Legislature included the following provision in W.Va.Code § 18–5–13a (2002):

> (e) Any document prepared, notice given, hearing conducted or action taken prior to the effective date of the amendments made to this section during the two thousand two regular session of the Legislature, is considered sufficient if the county board complied with the terms of this section effective at the time and the county board violates no other provision of law which would invalidate the document, notice, hearing or actions.

Accordingly, in this instance, the Board was required to comply with the provisions of W.Va.Code § 18–5–13(a) (1991) prior to March 8, 2002, and the provisions of W.Va. Code § 18–5–13(a) (2002) after that date.

Upon reviewing the record, we believe the Board complied with the statutory requirements, both before and after the 2002 amendments. We note that except for the public hearing, all actions taken by the Board with respect to the school closure procedure were taken prior to the effective date of House Bill 4149. Those actions included the newspaper publication, posting of the notice of the public hearing, and the preparation of the reasons and supporting data document. The record shows that pursuant to W.Va. Code § 18–5–13a (1991), the reasons and supporting data were made available for public inspection in the office of the Superintendent for the specified time period. In addition, three separate notices were posted in each school in the county and were published in the newspaper. Those notices clearly outlined the Board's proposal for closing and consolidating the schools. While the public hearing was held after the amendments to W.Va.Code § 18–5–13a became effective, the record shows that the Board complied with the statute's new requirements.

Based upon a review of the entire record, we conclude that the public was provided with a full and fair opportunity to participate in the procedure utilized by the Board pursuant to W.Va.Code § 18–5–13a to close Union Junior High School. Pursuant to the statutory requirements, the requisite information was made available for public inspection during the designated time periods, adequate notices were published, and public hearings were conducted. Therefore, we find that the Board complied with W.Va.Code § 18–5–13a, and that the circuit court did not err in denying the appellants' request for a writ of mandamus and/or injunctive relief.[6]

## IV.

## CONCLUSION

In conclusion, we note that our focus in this case was not on the merits of consolidation or our beliefs as to whether or not consolidation is advisable for the schools of Marshall County. Rather, we have confined our review of this case to whether or not the circuit court erred in denying the appellants the relief they sought. Accordingly, for the reasons set forth above, the final order of the

---

Governmental Proceedings Act by holding a private meeting the day before the vote on the school closure and consolidation.

6. Although we found that the circuit court erred with respect to determining the effective date of House Bill 4149, we reached the same ultimate decision as the circuit court, i.e., the appellants are not entitled to mandamus, injunctive, or declaratory relief. "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus Point 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965). *Accord State v. Lockhart,* 208 W.Va. 622, 636 n. 15, 542 S.E.2d 443, 457 n. 15 (2000); *Easterling v. American Optical Corp.,* 207 W.Va. 123, 133–34, 529 S.E.2d 588, 598–599 (2000).

Circuit Court of Marshall County entered on May 8, 2002, is affirmed.

Affirmed.