589 S.E.2d 523

**Beverly BOLYARD, Plaintiff Below, Appellant,**

v.

**THE BOARD OF EDUCATION OF GRANT COUNTY, Defendant Below, Appellee.**

No. 31223.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2003.

Decided Nov. 5, 2003.

Dissenting Opinion of Justice McGraw Dec. 10, 2003.

McGraw, J., dissented and filed opinion.

Daniel C. Staggers, Esq., Staggers & Staggers, Keyser, West Virginia, Attorney for Appellant.

Dennis V. DiBennedetto, Esq., Prosecuting Attorney, Petersburg, West Virginia, Attorney for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Grant County entered on September 9, 2002. Pursuant to that order, the circuit court denied a Petition for Declaratory Relief, Injunctive Relief, and a Writ of Mandamus filed by the appellant and petitioner below, Beverly Bolyard. Ms. Bolyard filed the petition after the appellee and respondent below, the Board of Education of Grant County, West Virginia (hereinafter "BOE"), refused to al-low her to resign from her position as an elementary school guidance counselor.

In this appeal, Ms. Bolyard contends that the circuit court erred by denying her petition without first conducting a hearing. She also claims that the circuit court erred by not applying W.Va.Code § 18A–2–2(f) (2002). This Court has before it, the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the circuit court's order is affirmed.

## I.

## FACTS

During the 2001–2002 school year, Ms. Bolyard was employed by the BOE as a school guidance counselor serving both Dorcas Elementary School and Maysville Elementary School in Grant County, West Virginia. On July 22, 2002, Ms. Bolyard applied for the position of Cooperative Coordinator/Guidance Counselor for the South Branch Vocational Center (hereinafter "vocational school") which serves Grant, Hardy, and Pendleton counties. The position required ten additional days of employment during the year which would result in an increase in retirement benefits.

Following two interviews, Ms. Bolyard was advised on August 6, 2002, by Robert Sisk, director of the vocational school, that he was going to recommended her for the job. The next day, Ms. Bolyard contacted the Superintendent of Grant County Schools by voice mail and requested that she be placed on the Personnel Agenda for the next BOE meeting scheduled for August 13, 2002. On August 8, 2002, Ms. Bolyard was notified that she had been hired as guidance counselor for the vocational school. She was told to report to work on August 12, 2002.

On August 9, 2002, Ms. Bolyard attempted to contact the Superintendent by phone to tell her that she intended to resign. However, the Superintendent was unavailable. Ms. Bolyard then informed the Superintendent's secretary and the Personnel Director that she intended to resign, and in fact, she tendered her resignation that same day. Ms. Bolyard's resignation was discussed at the

August 13, 2002 BOE meeting, and by a vote of 3–2, it was refused. Ms. Bolyard was told that she would not be permitted to resign her position as elementary school guidance counselor because school was about to begin and her resignation would be too disruptive for the students. The BOE also stated that in the Spring of 2001, it adopted a policy establishing July 15 as the last date for school employees to resign before the beginning of the next school year.

Thereafter, Ms. Bolyard filed a Petition for Declaratory Relief, Injunctive Relief, and a Writ of Mandamus with the Circuit Court of Grant County. The petition was denied by the circuit court after it received the BOE's response. No hearing was ever conducted. This appeal followed.

## II.

## STANDARD OF REVIEW

As set forth above, Ms. Bolyard appeals the circuit court's denial of her request for declaratory relief and a writ of mandamus. This Court has explained that "because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo* [.]" *Cox v. Amick*, 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995). Likewise, we have stated that a *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus. *McComas v. Board of Educ. of Fayette County*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996). Thus, with this standard in mind, we consider the parties' arguments.

## III.

## DISCUSSION

■ Ms. Bolyard first contends that the circuit court erred by denying her petition

and dismissing her case without conducting a hearing. She maintains that the BOE acted arbitrarily and capriciously by refusing to accept her resignation. Ms. Bolyard asserts that if a hearing had been held, she would have been able to show that the BOE permitted other teachers to resign from their positions after the July 15 deadline but before the next school year began. She also would have presented evidence establishing that the BOE never advised its teachers of the policy requiring the submission of resignations before July 15.

■ In response, the BOE asserts that the circuit court did not err by rendering its decision without conducting a hearing because Ms. Bolyard did not have a clear right to terminate her contract based upon W.Va. Code § 18A–2–2(c). The Board reasons that Ms. Bolyard could not satisfy all the requirements for a writ of mandamus, nor was she entitled to declaratory judgment.[1]

■ In Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969), this Court held that

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

In this case, Ms. Bolyard has asserted that she had a clear right to resign from her position as elementary school guidance counselor, and the BOE had a duty to accept her resignation. However, W.Va.Code § 18A–2–2(c) (2002) provides:

The continuing contract of any teacher[2] shall remain in full force and effect except

---

1. The BOE also argues that this appeal is moot because Ms. Bolyard is now employed as the guidance counselor at the vocational school, having tendered her resignation during the 2002–2003 school year in full compliance with the applicable law. We find no merit to this argument, however, because Ms. Bolyard seeks damages for the extra days of employment and retirement benefits she lost by having to wait a year to accept the guidance counselor position at the vocational school.

2. W.Va.Code § 18A–1–1(c)(1) (2002) defines "classroom teacher" as "the professional educator who has direct instructional or *counseling* relationship with pupils, spending the majority of his or her time in this capacity." (Emphasis added). Both parties in this case agree that the provisions of W.Va.Code § 18A–2–2(c) are applicable in this case.

**384**

as modified by mutual consent of the school board and the teacher, unless and until terminated: (1) By a majority vote of the full membership of the board on or before the first Monday of April of the then current year ... or (2) by written resignation of the teacher before that date, to initiate termination of a continuing contract. Such termination shall take effect at the close of the school year in which the contract is so terminated. Provided, That the contract may be terminated at any time by mutual consent of the school board and the teacher[.]

(Footnote added). Pursuant to the plain language of the statute,[3] Ms. Bolyard did not have a clear right to terminate her contract because she did not tender her resignation before the first Monday in April 2002. Furthermore, in accordance with this statute, the BOE did not have a legal duty to accept a resignation submitted after that date.

■ Recognizing the time limitation imposed by W.Va.Code § 18A–2–2(c), Ms. Bolyard further argues that the circuit court erred by not considering W.Va.Code § 18A–2–2(f), which provides:

Any classroom teacher ... who desires to resign employment with a board of education or request a leave of absence, such resignation or leave of absence to become effective on or before the fifteenth day of July of the same year and after completion of the employment term, may do so at any time during the school year by written notification thereof and any such notification received by a board of education shall automatically extend such teacher's public employee insurance coverage until the thirty-first day of August of the same year.

Based upon this provision of the statute, Ms. Bolyard argues that she could resign at any time during the school year. However, Ms. Bolyard did not tender her resignation during the school year. Instead, Ms. Bolyard submitted her resignation after the 2001–2002 school year ended.

■ To summarize, W.Va.Code § 18A–2–2(c) and W.Va.Code § 18A–2–2(f) establish certain time frames during which a teacher must submit a resignation in order for it to become effective. Ms. Bolyard simply did not satisfy these temporal requirements. Therefore, Ms. Bolyard had no clear legal right to terminate her contract when she attempted to do so. Also, the BOE did not have a clear legal duty to accept her resignation. In that regard, this Court has noted that " '[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel.' Syl. Pt. 3, in part, *Dillon v. Board of Educ.*, 177 W.Va. 145, 351 S.E.2d 58 (1986)." Syllabus Point 3, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). Accordingly, absent any statutory basis to afford Ms. Bolyard relief, we are unable to find that the circuit court erred by denying her request for declaratory relief and a writ of mandamus.

**IV.**

**CONCLUSION**

Thus, for the reasons set forth above, the final order of the Circuit Court of Grant County entered on September 9, 2002, is affirmed.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting:

(Filed Dec. 10, 2003)

In this case Ms. Boylard was forced by the Board to keep a job she wished to leave and forgo another, better-paying job because she learned of the new job offer several weeks too late. As a result, the Vo–Tech center was deprived of a qualified employee it wished to hire to service the needs of its students. The limitations placed on employees like Ms. Boylard, which only allow them a narrow window in which to change jobs to another school, limit the ability of schools like the Vo–Tech center to compete for quali-

---

**3.** "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of inter-  pretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

fied employees. Theses limitations are also not far from being the sort of "involuntary servitude" prohibited by our Constitution. As this Court noted over eighty years ago:

> In *Bailey v. Alabama*, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191, the federal anti-peonage acts, founded on the Thirteenth Amendment, inhibiting involuntary servitude, were held to be violated by a statute which sought to compel service of labor by making it a crime to fail or refuse to perform it. It was said in that case that, although the court might not impute to a state an actual motive to oppress by a statute, yet it should consider the material operation of such a statute and strike it down if it becomes an instrument of coercion forbidden by the federal Constitution.

*Ex parte Hudgins,* 86 W.Va. 526, 533, 103 S.E. 327, 330 (1920). While the state may not consider resigning from one's job as a guidance counselor a crime, it is clear that the Board of Education made it impossible for Ms. Boylard to take advantage of a opportunity to get a better job, essentially forcing her against her will to remain in a job she wished to leave.

Some may argue that requiring Board approval of any resignation serves the salutary purpose of preventing one school or school system from "cherry picking" good employees from another, but the countervailing argument is just as strong. Although the elementary school students may have benefitted from not losing Ms. Boylard, the Vo-tech students obviously did not have the benefit of her expertise. When one adds to the equation the fact that the resignation policy forces some employees to stay in a job against their will, I believe the balance tips in favor of allowing more freedom of movement for school employees. Therefore, I must respectfully dissent.