658 S.E.2d 555

**HARRISON COUNTY COMMISSION,**
Roger Diaz, President, Petitioners
Below, Appellants,

v.

**HARRISON COUNTY ASSESSOR,** Cheryl L. Romano, Assessor, Respondent Below, Appellee.

No. 33381.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 8, 2008.

Decided Jan. 25, 2008.

Michael J. Florio, Florio Law Offices, Clarksburg, Attorney for the Appellants.

Gregory H. Schillace, Schillace Law Office, Clarksburg, WV, Attorney for the Appellee.

John Kennedy Bailey, John Kennedy Bailey PLLC, Charleston, Attorney for Amicus Curiae, The West Virginia Assessors' Association.

DAVIS, Justice:

The Harrison County Commission herein appeals the denial of its petition for writ of mandamus filed in the Circuit Court of Harrison County, and the granting of the Harrison County Assessor's counter-petition for writ of mandamus. Resolution of this appeal requires this Court to consider W. Va.Code § 11–1C–8(a) (1998) (Repl.Vol.2003) in connection with W. Va.Code § 7–7–7 (2000) (Repl.Vol.2006) to determine whether a county assessor is required to obtain the advice and consent of the county commission prior to hiring employees to perform assessing and appraising duties when said employees will be paid from designated moneys contained in

a "revolving valuation fund," which fund is created by W. Va.Code § 11–1C–8. Having considered the various briefs submitted in this matter, the relevant law, and the oral arguments presented, we find that the circuit court correctly concluded that an assessor's hiring of employees to perform assessing and appraising duties is governed by W. Va.Code § 11–1C–8(a), and that the advice and consent of the county commission is not required. Therefore, we affirm the circuit court's denial of the Harrison County Commission's motion for writ of mandamus, as well as that court's granting of the Harrison County Assessor's counter-petition for writ of mandamus.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts presented in this case were stipulated below and are not in dispute. In May 2005, Harrison County Assessor Cheryl L. Romano, respondent below and appellee (hereinafter "Assessor Romano"), moved one of her existing employees from a position for which compensation had been paid from general county funds into a position involving assessing and/or appraising duties for which compensation was paid from a fund designated as the assessor's "valuation fund."[1] As-

sessor Romano obtained approval of the employee's change of position from the Property Valuation Training and Procedures Commission (hereinafter "the Valuation Commission"),[2] as required by W. Va.Code § 11–1C–8(a), but she did not seek approval from the Harrison County Commission, petitioner below and appellant (hereinafter "the County Commission"). In response, the County Commission filed a petition for writ of mandamus in the Circuit Court of Harrison County[3] seeking to require Assessor Romano to obtain the advice and consent of the County Commission, pursuant to W. Va.Code § 7–7–7,[4] in connection with the employee's change of position. Assessor Romano filed a counter-petition for writ of mandamus seeking to compel the County Commission to cease its alleged interference with Assessor Romano's employ of persons hired pursuant to W. Va.Code § 11–1C–8(a). By order entered September 18, 2006, the circuit court denied the County Commission's petition, and granted Assessor Romano's counter-petition. The County Commission then filed this appeal.

## II.

### STANDARD OF REVIEW

We are herein asked to review a circuit court's denial of a petition for writ of

---

1. The "valuation fund" is established by W. Va. Code § 11–1C–8 (1998) (Repl.Vol.2003), which states in relevant part:

 (a) In order to finance the extra costs associated with the valuation and training mandated by this article, there is hereby created a revolving valuation fund in each county which shall be used exclusively to fund the assessor's office. *No persons whose salary is payable from the valuation fund shall be hired under this section without the approval of the valuation commission,* the hirings shall be without regard to political favor or affiliation, and the persons hired under this section are subject to the provisions of the ethics act in chapter six-b [§§ 6B–1–1 *et seq.*] of this code, including, but not limited to, the conflict of interest provisions under chapter six-b of this code. *Notwithstanding any other provisions of this code to the contrary, assessors may employ citizens of any West Virginia county for the purpose of performing, assessing and appraising duties under this chapter upon approval of the employment by the valuation commission.*
 (Emphasis added).

2. The Property Valuation Training and Procedures Commission is created by W. Va.Code § 11–1C–3 (1990) (Repl.Vol.2003), and its powers and duties are set forth in W. Va.Code § 11–1C–4 (1990) (Repl.Vol.2003).

3. After the Honorable Judges of the Circuit Court of Harrison County voluntarily recused themselves from this matter, this Court assigned the Honorable David R. Janes, Chief Judge of the Marion County Circuit Court, to preside over the action below.

4. W. Va.Code § 7–7–7 (2000) (Repl.Vol.2006) states in relevant part,

 [t]he county clerk, circuit clerk, joint clerk of the county commission and circuit court, if any, sheriff, *county assessor* and prosecuting attorney, by and with the advice and consent of the county commission, may appoint and employ, to assist them in the discharge of their official duties for and during their respective terms of office, assistants, deputies and employees....
 (Emphasis added).

mandamus, and in connection therewith, the circuit court's grant of the respondent's counter-petition seeking a writ of mandamus. In Syllabus point 1 of *Staten v. Dean*, this Court held that "[t]he standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo." 195 W.Va. 57, 464 S.E.2d 576 (1995). Although the *Staten* Court addressed the standard of review only in the context of an order *granting* relief in mandamus, since that time we have repeatedly clarified that the standard is the same regardless of whether the trial court granted or denied the writ. *See, e.g., State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996) ("[W]e settled any doubt as to the standard of review for appeals in mandamus actions in West Virginia. In Syllabus Point 1 of *Staten*, we stated: 'The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo.' Thus, we consider de novo whether the legal prerequisites for mandamus relief are present."). *See also Stern v. Chemtall Inc.*, 217 W.Va. 329, 334, 617 S.E.2d 876, 881 (2005) ("We have stated that a *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." (citation omitted)); *Arneault v. Arneault*, 216 W.Va. 215, 217, 605 S.E.2d 590, 592 (2004) (same); *Bolyard v. Board of Educ. of Grant County*, 214 W.Va. 381, 383, 589 S.E.2d 523, 525 (2003) (same); *City of Benwood v. Board of Educ., County of Marshall*, 212 W.Va. 436, 439, 573 S.E.2d 347, 350 (2002) ("In reviewing a circuit court's decision to grant or deny a writ of mandamus, this Court applies a *de novo* standard of review." (citation omitted)); *Rice v. Underwood*, 205 W.Va. 274, 278, 517 S.E.2d 751, 755 (1998) ("When reviewing a circuit court's decision to deny or to grant the extraordinary remedy of mandamus, " '[t]he standard of appellate review of a circuit court's order . . . is de novo.' " " (citation omitted)). Accordingly, we now expressly hold that a *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus.

 Under this standard, " 'we consider *de novo* whether the legal prerequisites for mandamus relief are present.' " *McComas v.*

*Board of Educ. of Fayette County*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996) (quoting *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996)). Therefore, for purposes of our review, we note that

" '[m]andamus lies to require the discharge by a public officer of a nondiscretionary duty.' Point 3 Syllabus, *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W.Va. 479 [153 S.E.2d 284 (1967)]." Syllabus point 1, *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969).

Syl. pt. 1, *State ex rel. Williams v. Department of Military Affairs*, 212 W.Va. 407, 573 S.E.2d 1 (2002). Furthermore, "[t]o invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." Syl. pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981).

 Finally, to the extent that this Court's resolution of the instant matter requires us to resolve questions of law, our review remains *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

### III.

### DISCUSSION

The County Commission seeks our reversal of the circuit court's denial of its petition for writ of mandamus, which sought to prohibit Assessor Romano from hiring an employee to perform assessing and appraising duties pursuant to W. Va.Code § 11–1C–8(a), without first obtaining the advice and consent of the County Commission pursuant to W. Va.Code § 7-7-7. The County Commission argues that the circuit court erred first in finding the two aforementioned statutes to be in conflict, and then further erred by concluding that W. Va.Code § 11–1C–8(a) governed this matter. The County Commission submits that these two statutes may and

should be reconciled, as W. Va.Code § 7-7-7 permits the Assessor to "appoint and employ" employees with the advice and consent of the County Commission, while W. Va.Code § 11-1C-8(a) merely authorizes the Assessor to "employ" assistants upon the approval of the employment by the Valuation Commission. Thus, the County Commission concludes, W. Va.Code § 7-7-7 obligates Assessor Romano to obtain its advice and consent as to the *initial hiring* of all employees of the assessor, while W. Va.Code § 11-1C-8(a), which uses only the term "employ" and omits the term "appoint," grants Assessor Romano the right to *continue* to employ persons who are paid from the valuation fund, without further input from the County Commission, after receiving approval from the Valuation Commission. The County Commission maintains that it should have a role in all hiring decisions of the Assessor because the Assessor's office is located within its facility, its employees must work alongside the Assessor's employees, and it would be accountable for any misconduct by the Assessor's employees.[5]

Assessor Romano responds that the circuit court correctly determined that W. Va.Code § 7-7-7 and W. Va.Code § 11-1C-8(a) are in conflict and that the more specific statute, W. Va.Code § 11-1C-8(a), governs the employment of those hired to perform assessing and appraising duties, who are paid from designated moneys contained in the valuation fund. Assessor Romano contends that the West Virginia Legislature created a separate category of county assessors' employees through the enactment of W. Va.Code § 11-1C-1, *et seq.*, and specifically precluded any involvement of the County Commission in the decision to hire individuals employed thereunder.[6]

We begin our analysis by examining W. Va.Code § 11-1C-8(a), which states

(a) In order to finance the extra costs associated with the valuation and training

mandated by this article, there is hereby created a revolving valuation fund in each county which shall be used exclusively to fund the assessor's office. *No persons whose salary is payable from the valuation fund shall be hired under this section without the approval of the valuation commission,* the hirings shall be without regard to political favor or affiliation, and the persons hired under this section are subject to the provisions of the ethics act in chapter six-b [§§ 6B-1-1 *et seq.*] of this code, including, but not limited to, the conflict of interest provisions under chapter six-b of this code. *Notwithstanding any other provisions of this code to the contrary, assessors may employ citizens of any West Virginia county for the purpose of performing,* [sic] *assessing and appraising duties under this chapter upon approval of the employment by the valuation commission.*

■ Before delving into our consideration of this statute, we first observe that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). However, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959).

W. Va.Code § 11-1C-8(a) is a plainly worded statute that clearly expresses the legislative intent that employees hired to perform assessing and appraising duties as provided in that section of the code are to be approved by the Valuation Commission. First, W. Va.Code § 11-1C-8(a) creates the "valuation fund" to be "used exclusively to fund the assessor's office." It then plainly

---

5. The County Commission submits, as an example, that it is potentially responsible for any sexual harassment engaged in by an employee of Assessor Romano within the County Commission's facility.

6. At this juncture we pause to recognize the contributions of *Amicus Curiae,* the West Virginia Assessors' Association, who filed a brief in support of Assessor Romano. We appreciate its participation in this matter and will consider its position in conjunction with Assessor Romano's arguments.

states that "[n]o persons whose salary is payable from the valuation fund *shall be hired* under this section *without the approval of the valuation commission.*" The statute goes on to provide that such hirings "shall be without regard to political favor or affiliation," and sets out certain other ethics and conflict of interest provisions to which persons hired under this section will be subject. Thus, it is without question that, contrary to the County Commission's assertions, W. Va. Code § 11–1C–8(a) applies to the initial hiring of employees to be paid from the valuation fund and requires that approval for such hiring be obtained from the Valuation Commission.

Likewise, W. Va.Code § 7–7–7 pertains to the initial hiring of employees by certain county officials, including the assessor:

> The county clerk, circuit clerk, joint clerk of the county commission and circuit court, if any, sheriff, *county assessor* and prosecuting attorney, by and with the advice and consent of the county commission, *may appoint and employ, to assist them in the discharge of their official duties for and during their respective terms of office, assistants, deputies and employees....*

(Emphasis added). As the County Commission notes, this Court considered W. Va.Code § 7–7–7 in the context of a sheriff's hiring decision in *Webster County Commission v. Clayton,* 206 W.Va. 107, 522 S.E.2d 201 (1999). In *Clayton,* this Court applied the plain language of W. Va.Code § 7–7–7 in finding that the advice and consent of county commissions is required when sheriffs, and by implication the other county officials named in W. Va.Code § 7–7–7, hire employees to assist them in their official duties. In this respect, the *Clayton* Court held:

> The plain language of W. Va.Code § 7–7–7 (1982) (Repl.Vol.1993) permits a sheriff to appoint or employ individuals to assist him/her in the performance of his/her official duties *only after he/she has obtained the advice and consent of the county commission to such appointment or employment.*

Syl. pt. 4, 206 W.Va. 107, 522 S.E.2d 201 (emphasis added). Thus, we are presented with two distinct statutes that each require a county assessor to obtain the approval of a separate body with respect to his or her hiring decisions. Our task, then, is to reconcile these two apparently conflicting statutes. "[W]here two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. pt. 4, in part, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958). This is not a difficult task as the Legislature has plainly expressed its intent with respect to the application of W. Va.Code § 11–1C–8(a).

In this regard, we note that, in considering the meaning and legislative intent of W. Va.Code § 11–1C–8(a), we must look to the entire code section.

> In ascertaining the intent of the Legislature, we must not base our determination on a single term or a few select words. Rather, we must give effect to the entire statute. *Ewing v. Board of Educ. of County of Summers,* 202 W.Va. 228, 241, 503 S.E.2d 541, 554 (1998) (" ' " 'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 3, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446(1984).' Syl. pt. 4, *State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997).").

*Jan–Care Ambulance Serv., Inc. v. Public Serv. Comm'n,* 206 W.Va. 183, 190–91, 522 S.E.2d 912, 919–20 (1999).

In addition to the portion of W. Va. Code § 11–1C–8(a) discussed above, the statutory language also expressly declares that it shall be the governing statute with respect to a county assessor's hiring of a certain class of employees; namely, those who will perform assessing and appraising duties: "*[n]otwithstanding any other provisions of this code to the contrary,* assessors may employ citizens of any West Virginia county for the purpose of performing, assessing and appraising duties under this chapter *upon approval of*

*the employment by the valuation commission.*" W. Va.Code § 11–1C–8(a) (emphasis added). By virtue of the inclusion of the foregoing language in W. Va.Code § 11–1C–8(a), the Legislature has made clear that this section is to be exclusively applied to the hiring of employees of the county assessor who will perform assessing and appraising duties. This point is further emphasized by W. Va.Code § 11–1C–8(d), which states that

[m]oneys due the valuation fund shall be deposited by the sheriff of the county on a monthly basis as directed by the chief inspector's office for the benefit of the assessor and shall be available to and may be spent by the assessor *without prior approval of the county commission, which may not exercise any control over the fund.* Clerical functions related to the fund shall be performed in the same manner as done with other normal funding provided to the assessor.

Because the Legislature has declared that a county commission may not exercise "*any control*" over the fund, it would be inconsistent to conclude that a county commission must approve of employees who would be paid out of that fund. By exercising control over such employment decisions, the commission would necessarily be exercising control over the fund itself.

■■■ Our conclusion that W. Va.Code § 11–1C–8(a) governs the hiring of employees who perform assessing and appraising duties does not, however, render W. Va.Code § 7–7–7 meaningless as to county assessors. As was alluded in the facts of this case, and clarified during oral argument, there are generally two classes of employees who work in county assessors' offices: one class that is paid from general county funds, and another class, which is made up of those who perform assessing and appraising duties, that is paid from the valuation fund. Obviously, then, with respect to county assessors, the Legislature intended for the more general statute, W. Va.Code § 7–7–7, to apply to that class of employees who are paid from the general county fund, while W. Va.Code § 11–1C–8(a), a statute specifically related to fair and equitable property valuation, is intended to apply to those employees who are hired to perform

assessing and appraising duties and who are paid from the valuation fund. This conclusion is in accord with the maxim that, "[t]ypically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." *Bowers v. Wurzburg,* 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999). *See also Tillis v. Wright,* 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("[S]pecific statutory language generally takes precedence over more general statutory provisions."); Syl. pt. 6, *Carvey v. West Virginia State Bd. of Educ.,* 206 W.Va. 720, 527 S.E.2d 831 (1999) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." (internal quotations and citations omitted)); *Daily Gazette Co., Inc. v. Caryl,* 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute when an unreconcilable conflict arises between the terms of the statutes."); Syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."). Accordingly, we now hold that, when a county assessor seeks to hire an employee to perform duties other than assessing and appraising duties, the assessor is required to first obtain the advice and consent of the county commission pursuant to W. Va.Code § 7–7–7 (2000) (Repl.Vol. 2006). However, when a county assessor seeks to hire an employee to perform assessing and appraising duties, which employee will be paid from the revolving valuation fund established in W. Va.Code § 11–1C–8 (1998) (Repl.Vol.2003), the assessor is not required to obtain the advice and consent of the county commission. Instead, the assessor must obtain approval from the Property Valuation Training and Procedures Commission, as required by W. Va.Code § 11–1C–8(a).

The employee at issue in the instant proceeding was hired to perform assessing and appraising duties and, therefore, her salary was to be paid from the valuation fund. Ac-

cordingly, Assessor Romano was not required to seek the advice and consent of the County Commission. Assessor Romano properly obtained the approval of the Valuation Commission with respect to the hiring.

## IV.

## CONCLUSION

For the reasons explained above, we find no error in the September 18, 2006, order of the Circuit Court of Harrison County denying the County Commission's motion for writ of mandamus and granting Assessor Romano's counter-petition for writ of mandamus. Accordingly, we affirm that order.

Affirmed.