**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

SWVA, Inc.,
**Petitioner below, Petitioner**

**FILED**

**December 15, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 17-0120** (Cabell County 16-C-807)

**Huntington Sanitary Board and**
**City Council of the City of Huntington,**
**Respondents below, Respondents**

**CORRECTED MEMORANDUM DECISION**

Petitioner SWVA, Inc. (SWVA), an industrial customer of Respondent Huntington Sanitary Board (Sanitary Board), objected to the process by which the Sanitary Board sought a rate increase in December 2016. Just prior to approval of the ordinance implementing the rate increase by Respondent City Council of the City of Huntington (City Council) in December 2016, SWVA sought a writ of mandamus and injunctive relief from the Circuit Court of Cabell County claiming that the Sanitary Board did not comply with statutory notice requirements. The circuit court denied the relief sought on the grounds that SWVA has an administrative remedy with the Public Service Commission (PSC) for challenging the Sanitary Board's alleged noncompliance.[1]

This Court has considered the parties' briefs, oral arguments, and the record on appeal. As explained below, we find no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(d) of the West Virginia Rules of Appellate Procedure.

**I. Factual and Procedural Background**

The operative facts in this case are undisputed by the parties and involve a series of meetings conducted by the Sanitary Board and the City Council in December 2016. First, the Sanitary Board met to consider proposed rate increases to fund fifteen itemized projects in the total amount of $75 million. During this meeting on December 5, 2016, discussion turned to a new statutory provision requiring the Sanitary Board to provide prior public notice of construction projects that are not in the ordinary course of business. Concerns raised included whether the ordinance implementing the rate increase could be presented for approval by City Council prior to new City Council members taking office at the beginning of 2017. Ultimately, the Sanitary Board adjourned without taking action; a second meeting was scheduled for December 7, 2016.

---

[1] Petitioner is represented by Carte P. Goodwin, Esq., and Joseph M. Ward, Esq. Huntington Sanitary Board is represented by Robert R. Rodecker, Esq. and Laura A. Hoffman, Esq. The City Council of the City of Huntington is represented by Scott A. Damron, Esq.

1

When the Sanitary Board convened on December 7, 2016, it considered "An Ordinance Established and Fixing Rates, Fees and Charges of the Municipal Sewer System of Huntington, West Virginia" (Ordinance). The Ordinance proposed a three-step increase in rates charged by the Sanitary Board in order to fund $7.5 million in construction projects (reduced from the $75 million in projects proposed in the prior meeting). The Sanitary Board approved the Ordinance for consideration by City Council.

After a first reading, the City Council referred the Ordinance to its Finance Committee. During a meeting conducted on December 14, 2016, detailed presentations regarding the rate increases and the nine (reduced from fifteen) construction projects to be funded were made. During the public comment period of the meeting, SWVA representatives John O'Connor and Elizabeth Grille presented opposition to the proposal. By unanimous vote, the Finance Committee sent the Ordinance back to City Council with a positive recommendation.

On December 15 and 22, 2016, the Sanitary Board and City Council caused to be published in the *Herald Dispatch* newspaper a notice that the Council intended to take up consideration of the proposed Ordinance. The notice included the full text of the proposed Ordinance and stated that the hearing would be held on December 27, 2016, at 7:30, if interested parties wanted the opportunity to address the matter. A second notice was published on December 16 and 23, 2016, again providing the date and time of the hearing, and also informing the public that a copy of the Ordinance could be obtained from the Huntington City Clerk's office.

SWVA contends that it "was concerned about the effect the proposed rates increases would have on its operations," but was unable "to obtain, never mind digest, specifics about the Ordinance within the compressed timeframe." For that reason, on December 27, 2016 – the same day as the hearing – SWVA filed a complaint and petition for writ of mandamus and injunctive relief against the Sanitary Board and City Council. As relief, SWVA sought (1) a declaration that the nine proposed projects were not in the ordinary course of business and, thus, the Sanitary Board and the City Council were required to give public notice compliant with West Virginia Code § 24-2-11(l) (2015)[2]; (2) a mandate that the Sanitary Board and City Council comply with the notice requirements set forth in that section; and (3) an order preventing a vote on the proposed Ordinance until the notice requirements were met. SWVA filed a motion for a preliminary injunction and a temporary restraining order seeking to compel or enjoin noncompliance with the notice requirements, prohibit further consideration of the Ordinance, and to annul any decision made relating to the Ordinance if made in violation of West Virginia Code § 24-2-11(l).

That evening, the City Council convened its hearing to consider the proposed Ordinance. After debate and public comment, the City Council approved the Ordinance by a 7-3 vote. The next day, a hearing on SWVA's motions was noticed for January 10, 2017. At that hearing before the circuit court, the Sanitary Board argued that the majority of the injunctive relief requested by SWVA was now moot. Further, the Sanitary Board argued that SWVA was not entitled to any of

---

[2] As discussed more fully below, West Virginia Code § 24-2-11(l) establishes certain public notice requirements if a large, publicly-owned utility seeks to pursue a construction project. The notice required by this provision is only necessary if the projects are not in the ordinary course of business.

the remaining requested relief because (1) the improvements approved by the City Council in the Ordinance were in the "ordinary course of business" for which no notice is required under West Virginia Code § 24-2-11(l); and (2) SWVA had not exhausted its administrative remedies available through the PSC.

Following the hearing, the circuit court denied SWVA's motions, and dismissed its complaint with prejudice. In doing so, the circuit court found that the improvements adopted in the Ordinance were in the "ordinary course of business" and, therefore, did not require notice under W. Va. Code § 24-2-11(l). The circuit court also determined that the statutes governing the PSC provided an adequate remedy at law, and that SWVA was required to exhaust that specific administrative remedy. Specifically, the circuit court referenced West Virginia Code §§ 24-2-1(b)(6) and (7) (2015) as providing an adequate remedy for SWVA, because those sections grant the PSC jurisdiction "over large municipal utilities, such as [the Sanitary Board], with regard to the investigation and resolution of disputes involving their 'rates, fees and charges,' and . . . provides that customers of those large municipal utilities may bring complaints before the commission regarding those rates [sic] fees and charges."

SWVA appeals to this Court and argues that the circuit court erroneously characterized its challenge to the Ordinance as a complaint regarding the rates, fees and charges raised in the Ordinance when, in fact, it was challenging the Sanitary Board's and City Council's failure to comply with the notice requirements of West Virginia Code § 24-2-11(l). As a result of that mischaracterization, SWVA argues that the circuit court erroneously concluded it had a remedy under West Virginia Code § 24-2-1(b)(6) and (7). SWVA further argues that the circuit court erred in determining that the projects considered in the proposed Ordinance were "in the ordinary course of business" such that the notice requirements under § 24-2-11(l) were inapplicable.

## II. Standard of Review

As we have established, "[a] *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus."[3] We are likewise governed by a de novo standard of review in determining the scope of the PSC's statutorily granted jurisdiction: "'[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)"[4] With these standards in mind, we turn to the parties' arguments.

---

[3] Syl. Pt. 1, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

[4] Syl. Pt. 4, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

3

### III. Discussion

Central to the circuit court's denial of SWVA's writ of mandamus was SWVA's failure to meet the third element of our oft-repeated standard relating to when mandamus may be appropriate: "'To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy.' Syl. Pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981))."[5] As we have discussed, "'the burden of proof as to all the elements necessary to obtain mandamus is upon the party seeking the relief[,] . . . a failure to meet any one of them is fatal.'"[6] Accordingly, the circuit court denied the writ of mandamus having determined that SWVA had an adequate remedy before the PSC to challenge the rates, fees and charges in the Ordinance. The circuit court concluded that redress was available to SWVA under West Virginia Code §§ 24-2-1(b)(6) and (7), which provide:

> The jurisdiction of [the PSC] over political subdivisions of this state providing separate or combined services and having at least four thousand five hundred customers and annual combined gross revenue of $3 million or more that are political subdivisions of the state is limited to[7]: . . .
>
> (6) Investigation and resolution of disputes involving political subdivisions of the state regarding inter-utility agreements, rates, fees and charges, service areas and contested utility combinations.
>
> (7) Customers of water and sewer utilities operated by a political subdivision of the state and customers of stormwater utilities operated by a public service district may bring formal or informal complaints regarding the commission's exercise of the powers enumerated in this section and the commission shall resolve these complaints.[8]

---

[5] Syl. Pt. 3, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

[6] *State ex rel. Burdette v. Zakaib*, 224 W. Va. 325, 331, 685 S.E.2d 903, 909 (2009) (internal citation omitted).

[7] It is undisputed that the Sanitary Board is a publicly-owned utility with more than 4,500 customers and annual gross revenues of $3 million or more.

[8] Some provisions at issue in this appeal have undergone several revisions that took effect in July 2017. However, the pertinent portions of those provisions on which we rely have remained unchanged. At all relevant times herein, the 2015 amendments to these provisions were applicable.

SWVA contends that it does not have a remedy under these provisions because the challenge it raised to the Ordinance does not involve the rate, fees and charges, but rather the failure of the Sanitary Board and the City Council to comply with the notice provisions required under West Virginia Code § 24-2-11(l) prior to consideration of the Ordinance.[9] More specifically, SWVA argues that it challenges the Ordinance because the notices published in the

---

[9] West Virginia Code § 24-2-11(l) provides, in relevant part:

Water, sewer and/or stormwater utilities that are political subdivisions of the state and having at least four thousand five hundred customers and combined gross revenues of $3 million dollars or more desiring to pursue construction projects that are not in the ordinary course of business shall provide notice to both current customers and those citizens who will be affected by the proposed construction as follows:

(1) Adequate prior public notice of the contemplated construction by causing a notice of intent to pursue a project that is not in the ordinary course of business to be specified on the monthly billing statement of the customers or the utility for the month next preceding the month in which the contemplated construction is to be before the governing body on first reading.

(2) Adequate prior public notice of the contemplated construction by causing to be published as a Class I legal advertisement of the proposed action, in compliance with the provisions of article three, chapter fifty-nine of the code. The publication area for publication shall be all territory served by the district. If the political subdivision provides service in more than one county, publication shall be made in a newspaper of general circulation in each county that the political subdivision provides service.

(3) The public notice of the proposed construction shall state the scope of the proposed construction, the current rates, fees and charges, the proposed changes to said rates, fees and charges; the date, time and place of both a public hearing on the proposal and the proposed final vote on adoption; and the place or places within the political subdivision where the proposed construction and the rates, fees and charges may be inspected by the public. A reasonable number of copies of the proposal shall be kept at the place or places and be made available for public inspection. The notice shall also advise that interested parties may appear at the public hearing before the political subdivision and be heard with respect to the proposed construction and the proposed rates, fees and charges.

5

*Herald Dispatch* did not adequately notify the public or customers as required under the notice provision and thus, § 24-2-1(b)(6) and (7) do not apply to grant the PSC jurisdiction over its challenge to the Ordinance. Even accepting SWVA's argument that it challenges the Ordinance based on the lack or insufficiency of the notice as opposed to the rates, fees and charges the Ordinance imposes, we find that SWVA has an available remedy through the PSC under §24-2-1(b)(2) (2015).[10]

West Virginia Code § 24-2-1(b)(2) grants the PSC jurisdiction over "[r]egulation of measurements, practices, acts or services, as granted and described in section seven of this article[.]"[11] Section seven, in turn, provides, in relevant part:

> Whenever, under the provisions of this chapter, the commission shall find any regulations, measurements, *practices, acts* or service to be unjust, unreasonable, *insufficient* or unjustly discriminatory, or *otherwise in violation of **any provisions of this chapter***, or shall find that any service is inadequate, or that any service which is demanded cannot be reasonably obtained, the commission shall determine and declare, and by order fix reasonable measurement, regulations, acts, practices or services, to be furnished, imposed, observed and followed in the state in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory, inadequate or otherwise in violation of this chapter, and shall make such other order respecting the same as shall be just and reasonable.[12]

SWVA alleges that the public notices provided by the Sanitary Board and the City Council were either *insufficient* or were *in violation* of the notice provisions, codified in § 24-2-11(l) – one such "*provision of this chapter*." When § 24-2-1(b)(2), the jurisdictional provision, is reviewed in

---

[10] SWVA also argues that West Virginia Code § 24-2-1(b)(6) is inapplicable because it provides for PSC jurisdiction over the investigation and resolution of disputes relating to rates, fees, and charges only in the context of inter-utility agreements, not all challenges to rates, fees and charges. Because we find that the PSC has jurisdiction over compliance with the notice requirements, we need not address that argument.

[11] West Virginia Code § 24-2-1(b) provides that the PSC's jurisdiction over large, publicly-owned utilities, as defined in that section, is limited to issues arising from the contexts enumerated in §24-2-1(b)(1) to -(b)(8). Although not raised in its brief, SWVA contended at oral argument that the delegation to the local sanitary board in §24-2-11(l) somehow abrogates the general jurisdiction of the PSC set forth in § 24-2-7(a). We decline to adopt that view. The provisions of §24-2-11(l) and §24-2-7(a) are not contradictory and we find that they may be read together to give effect to the Legislature's intent.

[12] W. Va. Code § 24-7-2(a) (2015) (emphasis added).

conjunction with § 24-2-7(a), it is apparent that jurisdiction with regard to challenges to the notice provisions of chapter 24 is clearly and unambiguously granted to the PSC. This Court has long held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."[13] Applying the statute to these circumstances, the PSC has jurisdiction over SWVA's challenge to the Ordinance for failure to fully comply with the notice provisions set forth in § 24-2-11(l).

In addition to SWVA's failure to meet the third element required for mandamus to issue, we have also discussed that "[t]he general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act."[14] Further, we have explained that "[p]roceedings in equity for injunctions cannot be maintained where there is an administrative remedy provided by statute which is adequate and will furnish proper remedy."[15] Thus, the circuit court did not err in denying the writ of mandamus or in denying injunctive relief on the grounds that SWVA had another remedy at law that had not been exhausted.

SWVA next raises as error the circuit court's determination that the projects were "in the ordinary course of business" and therefore the forms of notice provided for under West Virginia Code § 24-2-11(l) were not required.[16] For the same reasons set forth above, however, the circuit court did not have jurisdiction to determine whether the notice provisions were applicable, and therefore should not have ruled on the merits of whether the projects were or were not "in the ordinary course of business" so as to trigger the notice requirements. As we have discussed, insufficiency of or noncompliance with public notice required under West Virginia Code § 24-2-11 is within the jurisdiction of the PSC, not the circuit court.

For the foregoing reasons, we affirm the result reached by the circuit court in denying the writ of mandamus and injunctive relief for failure to exhaust an available administrative remedy.

Affirmed.

---

[13] Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

[14] Syl. Pt. 1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n of Parkersburg*, 143 W. Va. 674, 104 S.E.2d 320 (1958).

[15] Syl. Pt. 4, *Bank of Wheeling v. Morris Plan Bank & Trust Co.*, 155 W. Va. 245, 183 S.E.2d 692 (1971).

[16] The circuit court, having determined that the projects were "in the ordinary course of business," instead found that the Sanitary Board and the City Council had "provided public notice sufficient to satisfy the only notice requirement to which the Ordinance was subject" by providing the statutory notice required under West Virginia Code §§ 8-11-4 and 16-13-16 and forwarding the press release to the newspaper.

7

**ISSUED**:  December 15, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

8