IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0324

_____

**FILED**

**May 30, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DWAYNE CALES,
Petitioner Below, Petitioner

v.

TOWN OF MEADOW BRIDGE: TIMOTHY KILLEN, MAYOR;
PATRICIA JONES, RECORDER; BONNIE HICKS, EULA MATLOCK,
AND JOSEPHINE KINCAID, COUNCIL MEMBERS,
Respondents Below, Respondents

_____

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr., Judge
Civil Action No. 15-C-260

AFFIRMED

_____

Submitted: April 19, 2017
Filed: May 30, 2017

Barry L. Bruce, Esq.
Barry L. Bruce and Associates, L.C.
Lewisburg, West Virginia
Counsel for the Petitioner

R. Grady Ford, Esq.
The Ford Law Firm PLLC
Lewisburg, West Virginia
Counsel for the Respondents

Timothy P. Stranko, Esq.
Charleston, West Virginia
Attorney for Amicus Curiae
West Virginia Municipal League, Inc.

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Syllabus Point 1, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

2.     "'To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy.' Syllabus point 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981)." Syllabus Point 3, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

3.     "'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syllabus Point 4, *Harrison Cty. Comm'n v. Harrison Cty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008).

4.     "Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been

i

prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign." Syllabus Point 5, *State ex rel. Carson v. Wood*, 154 W. Va. 397, 175 S.E.2d 482 (1970).

5. A municipal sanitary board member does not hold a municipal office and thus is not a municipal officer protected by West Virginia Code § 6-6-7 (2015) in the event of involuntary removal.

WALKER, Justice:

Petitioner Dwayne Cales appeals the March 1, 2016 order of the Circuit Court of Fayette County denying his petition for a writ of mandamus seeking reinstatement to his position as a member of the Meadow Bridge Sanitary Board ("Sanitary Board"). On appeal, Petitioner asserts that he was a municipal officer protected by West Virginia Code § 6-6-7 in the event of involuntary removal. Respondents assert that Petitioner was not a municipal officer for purposes of West Virginia Code § 6-6-7 and that his removal by a majority vote of Respondent Meadow Bridge Town Council ("Town Council") was proper.[1] Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we affirm the March 1, 2016 order of the Circuit Court of Fayette County.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2015, Petitioner was appointed by the Town Council to serve his third consecutive term as a member of the Sanitary Board. Subsequently, Sanitary Board members voted in favor of him serving in the capacity of vice chairman of the Sanitary Board.

---

[1] We acknowledge the amicus curiae brief filed by the West Virginia Municipal League in support of Respondents in this case.

At a special meeting on September 21, 2015, a majority of the Town Council voted to remove Petitioner from the Sanitary Board pursuant to § 3-112 of the Meadow Bridge Code of Ordinances ("Municipal Code").[2] On September 25, 2015, Petitioner filed a "Petition for Writ of Mandamus Pursuant to West Virginia Code § 6-6-7 and § 16-13-18" against Respondents[3] seeking reinstatement to his position as a member of the Sanitary Board. Petitioner alleged that Respondents wrongfully removed him from his position as vice chairman of the Sanitary Board "in violation of West Virginia Code § 16-13-18[4] as they had no authority to remove [him] from his position . . . and, pursuant to

---

[2] Municipal Code § 3-112 provides, in pertinent part, that "[a]ll officers appointed by the Council *may be removed from office at the pleasure of the Council without any cause being assigned or shown therefor, a majority of members of the Council concurring in such removal*[.]" (emphasis added).

[3] Respondents are the Town of Meadow Bridge, Mayor Timothy Killen, Recorder Patricia Jones, and Council Members Bonnie Hicks, Eula Matlock, and Josephine Kincaid.

[4] West Virginia Code § 16-13-18 addresses, among other things, the organization of a sanitary board:

> (a) The governing body shall provide by ordinance the organization of the board, and that the custody, administration, operation and maintenance of such works are under the supervision and control of a sanitary board, created under this section.
>
> (b) The sanitary board shall be composed of either the mayor of the municipality, or the city manager thereof, if the municipality has a city manager form of government, and two persons appointed by the governing body: Provided, That, in the event of an acquisition or merger of an existing works, the

(continued . . .)

2

governing body may increase the membership to a maximum of four members in addition to the mayor or city manager of the municipality served by the board.

(c) During the construction period, one of the members must be a registered professional engineer, except that if a registered professional engineer is under contract for the project, the membership of the board is not required to include a registered professional engineer. The engineer member of the board need not be a resident of the municipality. After the construction of the plant for which no registered professional engineer is under contract has been completed, the engineer member may be succeeded by a person not an engineer. No officer or employee of the municipality, whether holding a paid or unpaid office, is eligible for appointment to the sanitary board until at least one year after the expiration of the term of his or her public office. The appointees shall originally be appointed for terms of two and three years respectively, and upon the expiration of each term and each succeeding term, an appointment of a successor shall be made in like manner for a term of three years. Vacancies shall be filled for an unexpired term in the same manner as the original appointment. Each member shall give bond, if any, as required by ordinance. The mayor or city manager shall act as chairman of the sanitary board, which shall elect a vice chairman from its members and designate a secretary and treasurer (but the secretary and the treasurer may be one and the same) who need not be a member or members of the sanitary board. The vice chairman, secretary and treasurer shall hold office at the will of the sanitary board.

(d) The members of the sanitary board are entitled to receive compensation for their services, either as a salary or as payments for meetings attended, as the governing body determines, and are entitled to payment for their reasonable expenses incurred in the performance of their duties. The governing body shall fix the reasonable compensation of the secretary and treasurer in its discretion, and shall fix the

(continued . . .)

West Virginia Code § 6-6-7, Respondents failed to follow the statutorily required procedure for removal of a municipal officer." (footnote added).

Respondents filed a motion to dismiss on October 23, 2015, asserting that West Virginia Code § 6-6-7 is inapplicable to Petitioner because a vice chairman of the Sanitary Board is not a "municipal officer" under West Virginia Code § 6-6-7(a), and is therefore not afforded the extraordinary protections and safeguards included in that statute.[5] Respondents further asserted that Municipal Code § 3-112 gave them authority

---

amounts of bond to be given by the treasurer. All compensation, together with the expenses previously referred to in this section, shall be paid solely from funds provided under the authority of this article. The sanitary board may establish bylaws, rules and regulations for its own governance.

W. Va. Code § 16-13-18 (2016). The role of a sanitary board is set forth in West Virginia Code § 16-13-2, which provides in pertinent part as follows:

(a) The construction, acquisition, improvement, equipment, custody, operation and maintenance of any works for the collection, treatment or disposal of sewage and, in addition, for the collection and control of stormwater and the collection of revenues therefrom for the service rendered thereby, shall be under the supervision and control of a sanitary board appointed by the governing body as set forth in section eighteen of this article.

W. Va. Code § 16-13-2 (2016).

[5] At the time of Petitioner's removal from office, West Virginia Code § 6-6-7 provided, in pertinent part:

(continued . . .)

(a) Any person holding any county, school district or *municipal office*, including the office of a member of a board of education and the office of magistrate, the term or tenure of which office is fixed by law, whether the office be elective or appointive, except judges of the circuit courts, may be removed from such office in the manner provided in this section for official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality or for any of the causes or on any of the grounds provided by any other statute.

(b) Charges may be preferred:

. . . .

(2) In the case of any municipal officer, by the prosecuting attorney of the county wherein such municipality, or the greater portion thereof, is located, any other elected officer of the municipality, or by any number of persons other than the prosecuting attorney or other municipal elective officer of the municipality who are residents of the municipality, which number shall be the lesser of twenty-five or one percent of the total number of voters of the municipality participating in the election at which the governing body was chosen which election next preceded the filing of the petition.

. . . .

(c) The charges shall be reduced to writing in the form of a petition duly verified by at least one of the persons bringing the same, and shall be entered of record by the court, or the judge thereof in vacation, and a summons shall thereupon be issued by the clerk of such court, together with a copy of the petition, requiring the officer or person named therein to appear before the court, at the courthouse of the county where such officer resides, and answer the charges on a day to be named therein, which summons shall be served at

(continued . . .)

5

least twenty days before the return day thereof in the manner by which a summons commencing a civil suit may be served.

The court, or judge thereof in vacation, or in the case of any multi-judge circuit, the chief judge thereof, shall, without delay forward a copy of the petition to the Supreme Court of Appeals and shall ask for the impaneling or convening of a three-judge court consisting of three circuit judges of the state. The Chief Justice of the Supreme Court of Appeals shall without delay designate and appoint three circuit judges within the state, not more than one of whom shall be from the same circuit in which the petition is filed and, in the order of such appointment, shall designate the date, time and place for the convening of such three-judge court, which date and time shall not be less than twenty days from the date of the filing of the petition.

Such three-judge court shall, without a jury, hear the charges and all evidence offered in support thereof or in opposition thereto and upon satisfactory proof of the charges shall remove any such officer or person from office and place the records, papers and property of his office in the possession of some other officer or person for safekeeping or in the possession of the person appointed as hereinafter provided to fill the office temporarily. Any final order either removing or refusing to remove any such person from office shall contain such findings of fact and conclusions of law as the three-judge court shall deem sufficient to support its decision of all issues presented to it in the matter.

. . . .

(e) In any case wherein the charges are preferred by the chief inspector and supervisor of public offices against the county commission or any member thereof or any county district or municipal officer, the proceedings under this section shall be conducted and prosecuted by the prosecuting attorney of the county in which the officer proceeded against resides, and on any appeal from the order of the three-judge

(continued . . .)

to remove Petitioner from his position as a member of the Sanitary Board, with or without cause, by a majority vote of the Town Council.

Following a hearing on December 23, 2015, and in consideration of the parties' memoranda proposing findings of fact and conclusions of law, the circuit court entered an "Order Denying Relief and Dismissing Petition for Writ of Mandamus" on March 1, 2016. The circuit court held that it was not reasonable, appropriate or proper to extend the procedural protections and safeguards of West Virginia Code § 6-6-7 to a member of a sanitary board. The circuit court determined that Petitioner was not a public official holding a public office, and thus declined to find a legal duty on the part of the Town of Meadow Bridge to comply with the extraordinary protections and safeguards of West Virginia Code § 6-6-7 in removing Petitioner from his position on the Sanitary Board.

---

court in any such case, the Attorney General of the State shall represent the people. When any municipal officer is proceeded against the solicitor or municipal attorney for such municipality may assist in the prosecution of the charges.

W. Va. Code § 6-6-7 (2015) (emphasis added). Although this statute was rewritten effective June 10, 2016, we note that its use of the terms "any person holding any . . . municipal office" and "municipal officer" remain unchanged. W.Va. Code § 6-6-7 (Supp. 2016). Unless otherwise noted, we refer to the version of the statute in effect at the time of Petitioner's removal. Therefore, our analysis applies equally to the current version of West Virginia Code § 6-6-7.

Citing to our holding in *Christopher v. City of Fairmont*, 167 W. Va. 710, 280 S.E.2d 284 (1981)[6], the circuit court found that Petitioner failed to establish the requisite criteria to prove that his position at the sanitary board was an "office." The circuit court noted that a sanitary board member is not expressly designated as an official in the operative statute, West Virginia Code §16-13-18, or in the town ordinance, Municipal Code § 17-113.[7] The circuit court also recognized public policy

---

[6] We discuss our holding in *Christopher*, 167 W. Va. 710, 280 S.E.2d, in further detail below.

[7] Pursuant to West Virginia Code § 16-13-18(a)-(b), the Town of Meadow Bridge enacted an ordinance providing for the organization of a sanitary board comprised of the mayor of the municipality and two persons appointed by the governing body. Municipal Code § 17-113, for all intent and purpose, mirrors the guidelines established in West Virginia Code §§ 16-13-1 through 16-13-24. Municipal Code § 17-113(1) provides that "the Council of the Town of Meadow Bridge does hereby create and establish a Sanitary Board, with all powers and duties as provided in and pursuant to the Act. (Chapter 16, Article 13, of the Code of West Virginia)." Municipal Code § 17-113(2) provides that "[t]he Sanitary Board shall consist of the Mayor, who shall be Chairman, one (1) Councilperson and one (1) other resident of the Town who shall be appointed for a term of three years and until his successor is appointed and qualifies; and the councilperson and other resident shall be appointed by the Town Council." Municipal Code § 17-113(3) provides that:

> As soon as may be practicable following the appointment of a new member of the Sanitary Board, the Board shall hold an organizational meeting and choose a Vice-Chairman from among its members, and a Secretary and Treasurer, who may be one (1) person and need not be a Board member, and such officers shall hold office at the will of the Board. No bond shall be required of the Board members as such, but the Treasurer, whether a member of the Board or not, shall give bond in the penalty of Two Thousand ($2,000.00) Dollars for the proper application of all money

(continued . . .)

8

considerations supporting its finding that Petitioner was not entitled to the procedural

protections set forth in West Virginia Code § 6-6-7, such as the substantial time, travel,

and expenditure of resources associated with removal proceedings. Finally, the circuit

court noted the lack of precedent upon which it could rely:

> As there is no case law directly on point the factual
> circumstances presented in the case at bar, and there is rather
> meager case law regarding how far the protections of § 6-6-7
> may actually extend, it is unclear whether these facts would
> hold sway over West Virginia Supreme Court affirming or
> extending § 6-6-7 protections to officials that may appear to
> be upon the cusp of, or even far removed, from what this
> Court thinks was originally contemplated as the intended
> purpose behind the legislature's development of § 6-6-7
> procedural protections and safeguards. Based upon the
> existence of very limited precedence, it is clear to this Court
> clarification in the application of § 6-6-7 either by the
> legislature, or by the West Virginia Supreme Court of
> Appeals, is both desired and necessary.

Petitioner appeals the circuit court's order.


## II. STANDARD OF REVIEW

In this case, we are asked to review the circuit court's denial of Petitioner's

writ of mandamus. In Syllabus Point 1 of *Harrison County Commission v. Harrison

County Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008), this Court established the

standard of review that guides our analysis in these types of cases and held that "[a] *de

---

received by him as Treasurer of the Board, and otherwise
conditioned according to law.

9

*novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." In so holding, we explained that:

> Under this standard, "we consider *de novo* whether the legal prerequisites for mandamus relief are present." *McComas v. Board of Educ. of Fayette County*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996) (quoting *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996)).

*Id*. at 28, 658 S.E.2d at 558. The prerequisites for mandamus relief are:

> "[t]o invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." Syl. pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981).

*Id*. at 26, 658 S.E.2d at 556, syl. pt. 3.

Moreover, we apply a *de novo* review in this case because the issue presented requires us to resolve questions of law. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Keeping these standards in mind, we proceed to consider the parties' arguments.

### III. DISCUSSION

Petitioner presents four assignments of error.[8]  However, the sole issue at the heart of this matter is whether a member of a municipal sanitary board is a municipal officer entitled to the procedural protections set forth in West Virginia Code § 6-6-7. Petitioner contends he could be removed from his position on the Sanitary Board only by the procedures outlined in West Virginia Code § 6-6-7, which include, among other things, removal for cause following an investigation and complaint filed by the county's prosecuting attorney and a trial before an appointed three-judge panel.  W.Va. Code § 6-6-7(a) - (c).  However, in order to prevail, Petitioner must show that he was a municipal officer under West Virginia Code § 6-6-7, which applies to "[a]ny person holding any county, school district or *municipal office . . .*"  W.Va. Code § 6-6-7(a).

Petitioner argues that the circuit court should have read West Virginia Code § 6-6-7 *in pari materia* with West Virginia Code § 6-6-8.[9]  He contends that while West

---

[8]  Petitioner alleges that: (1) the circuit court wrongly determined that the position of sanitary board member and/or vice chairman is not an "officer" as contemplated by West Virginia Code § 6-6-7; (2) the circuit court failed to consider West Virginia Code § 6-6-8 in its analysis of whether the sanitary board was covered by West Virginia Code § 6-6-7; (3) the circuit court wrongly elevated Municipal Code § 3-112 over West Virginia Code § 6-6-7; and (4) the small size of the sanitary board has no bearing on the enforceability of West Virginia Code § 6-6-7.

[9] West Virginia Code §6-6-8 provides:

> The court, body or officer authorized by law to appoint
> any person to any county, magisterial district, independent
> school district, or municipal office, a term or tenure of which

(continued . . .)

11

Virginia Code § 6-6-7 applies to officers with fixed terms, West Virginia Code § 6-6-8 applies to officers without fixed terms. Thus, Petitioner reasons that he must only show that he is an officer with a fixed term, which is made clear by West Virginia Code § 16-13-18(c), for West Virginia Code § 6-6-7 to apply.

Petitioner further contends that contrary to the circuit court's holding, the reasoning in *Christopher* supports a finding that sanitary board members are municipal officers for purposes of West Virginia Code § 6-6-7, as is the vice chairman of a sanitary board. Specifically, Petitioner alleges that:

> 1. The position of Sanitary Board member is created by statute § 16-13-18(c).
>
> 2. The position of vice chairman is designated as an office under statute § 16-13-18(c) and Municipal Code § 17-113.
>
> 3. The statute requires a bond if same is required by the enabling Municipal Code § 17-113, which only requires a bond of the secretary/treasurer.[10]

---

> is not fixed by law, may remove any person appointed to any office by such court, board, body or officer, with or without cause whenever such removal shall be deemed by it, them or him for the good of the public service, and the removal of any such person from office shall be final.

W. Va. Code § 6-6-8 (2015).

[10] In Petitioner's reply brief, he additionally contends that because he handled money, he was in fact required to have a bond under West Virginia Code § 6-2-11 and Municipal Code § 17-113. The former provides that:

(continued . . .)

12

4. The statute § 16-13-1, *et seq*, does not require an oath nor does the ordinance; however, the appellant was given an oath by the Mayor prior to taking office on June 1, 2015[.][11]

5. The duties and tenure are prescribed by statute § 16-13-18(c) and the powers of the Sanitary Board, § 16-13-3.[12]

---

Every officer or employee of a municipality who handles public funds or property, and every other officer or employee of a municipality of whom it shall be required, shall, unless otherwise provided by law, give bond, with good security, to be approved by the council or other similar body of such municipality, and in such penalty as such council or other similar body shall prescribe, conditioned upon the faithful discharge of the duties of his office or employment and the faithful accounting for and paying over, as required by law, of any funds or property coming into his possession.

W.Va. Code § 6-2-11 (2015). Municipal Code § 17-113(8) expressly requires that:

The Sanitary Board may from time to time, in its discretion, require any of its employees to furnish a good and suitable indemnity bond, with a recognized and reputable surety, conditioned upon the faithful discharge of their duties as such, and to deliver up and pay over all money as provided by law. The Board shall require all persons who collect or otherwise handle funds of the Board to furnish a good and proper bond, with a recognized and reputable corporate surety conditioned upon the faithful performance of their duties and for the proper handling and care of said funds in their hands. Such bond shall be in an amount equal to the sum of money which might at any one time be in the hands of such person or persons, as may be determined by the Board.

[11] In Petitioner's reply brief, he asserts an alternative argument that despite the fact that the enabling statute, West Virginia Code § 16-13-18, expressly requires an oath only if it is required by the enabling town ordinance, he was required to take an oath of office under West Virginia Code § 6-1-3 (2016) because "every person elected or appointed to any office in this state. . . shall take the oath. . . ."

13

---

[12] West Virginia Code § 16-13-3 provides:

> The board shall have power to take all steps and proceedings and to make and enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers under this article: Provided, That any contract relating to the financing of the acquisition or construction of any works, or any trust indenture as provided for, shall be approved by the governing body of the municipality before the same shall be effective.

> The board may employ engineers, architects, inspectors, superintendents, managers, collectors, attorneys, and other employees as in its judgment may be necessary in the execution of its powers and duties, and may fix their compensation, all of whom shall do the work as the board shall direct. All compensation and all expenses incurred in carrying out the provisions of this article shall be paid solely from funds provided under the authority of this article, and the board shall not exercise or carry out any authority or power herein given it so as to bind said board of said municipality beyond the extent to which money shall have been or may be provided under the authority of this article.

> No contract or agreement with any contractor or contractors for labor and/or material, exceeding in amount the sum of ten thousand dollars, shall be made without advertising for bids, which bids shall be publicly opened and award made to the best bidder, with power in the board to reject any or all bids.

> After the construction, installation, and completion of the works, or the acquisition thereof, the board shall operate, manage and control the same and may order and complete any extensions, betterments and improvements of and to the works that the board may consider expedient, if funds therefor be available or are made available as provided in this article, and shall establish rules and regulations for the use and operation of the works, and of other sewers, stormwater

(continued . . .)

6. The statute § 16-13-18(d) states how Sanitary Board members are to be paid.

Additionally, Petitioner asserts that the Sanitary Board is an autonomously run statutory board within the municipal entity. Petitioner contends that because West Virginia Code § 16-13-3 and Municipal Code § 17-113 provide that the Sanitary Board has the "power to take all steps and proceedings and to make and enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers," and because the Sanitary Board has the ability to hire employees such as engineers, architects, and attorneys, the Sanitary Board has the ability to bind the Town of Meadow Bridge and is an entity of the Town Council. He maintains that the only

conduits, and drains connected therewith so far as they may affect the operation of such works, and do all things necessary or expedient for the successful operation thereof, including, but not limited to, those activities necessary to comply with all federal and state requirements, including stormwater and surface runoff water quality improvement activities.

The sanitary board may declare an emergency situation in the event of collector line breaks or vital treatment plant equipment failure and shall be exempted from competitive bidding requirements and enter into direct purchase agreements or contracts for the expenses. All public ways or public works damaged or destroyed by the board in carrying out its authority under this article shall be restored or repaired by the board and placed in their original condition, as nearly as practicable, if requested so to do by proper authority, out of the funds provided by this article.

W. Va. Code § 16-13-3 (2016).

15

power that is expressly limited under West Virginia Code § 16-13-3 is the Sanitary Board's ability to commit to capital funding and borrowing.

Petitioner also argues that because, pursuant to West Virginia Code § 16-13-18, the Sanitary Board "may establish its own bylaws, rules and regulations for its own governance," it operates as an independent board appointed by the Town Council. He argues that pursuant to West Virginia Code § 16-13-18(c), "the vice chairman . . . shall hold office at the will of the sanitary board," and thus, removal of the vice chairman could only occur by the sanitary board, not the Town Council, or under West Virginia Code § 6-6-7. Finally, Petitioner maintains that Respondents are estopped from arguing that he was not an officer, because in order to terminate him under Municipal Code § 3-112, he had to be an "officer."

Respondents assert that an officer on a Town Council appointed board or authority is not necessarily a municipal officer for purposes of West Virginia Code § 6-6-7. Respondents warn that the effect of applying the strictures of West Virginia § 6-6-7 to any county or municipal board would constitute a dramatic change in how localities routinely function. Respondents emphasize that the Legislature explicitly delegated the power to establish the organization and rules of the municipal sanitary boards to the municipalities' governing bodies, which they may establish "by ordinance." W. Va. Code § 16-13-18(a) ("The governing body shall provide *by ordinance* the organization of

16

the [sanitary board]. . .") (emphasis added). They contend that by delegating the authority of establishing the organization of the Sanitary Board to the Town of Meadow Bridge "by ordinance," the Municipal Code applies to the individuals appointed to the Sanitary Board by the Town Council. Thus, they maintain that the removal of the Petitioner pursuant to Municipal Code § 3-112 was entirely lawful.

Respondents additionally assert that while the Sanitary Board was, and is, authorized to establish bylaws, rules, and regulations regarding its own governance pursuant to West Virginia Code § 16-13-18(d), it did not. They contend that since no bylaws or regulations were promulgated by the Sanitary Board regarding its governance or the removal of officers that would displace or supersede the Municipal Code, provisions related to removal of individuals appointed to the Sanitary Board in Municipal Code § 3-112 governs removal of individuals appointed to the Sanitary Board by the Town Council.

Alternatively, Respondents argue that if this Court finds that Petitioner was entitled to the protections of West Virginia Code § 6-6-7, that statute expressly provides for dismissal on "any of the grounds provided by any other statute." Respondents contend that because the Legislature delegated the authority to establish by ordinance the organization of the Sanitary Board pursuant to West Virginia Code § 16-13-18(a), Municipal Code §3-112 provides appropriate grounds under the "any other statute" language in West Virginia Code § 6-6-7(a). Finally, they assert that as a matter of public

17

policy, extending the level of protection afforded by § 6-6-7 to a member of a sanitary

board, or any other town board or authority, and requiring that expenditure of resources

and time to remove a member, simply does not makes sense.[13]

We have recognized that there is a legal distinction between a "public

officer" and a "public employee" and that:

> As a general rule it may be stated that a position is a public
> office when it is created by law, with duties cast on the
> incumbent which involve an exercise of some portion of the
> sovereign power and in the performance of which the public
> is concerned, and which are continuing in their nature and not
> occasional or intermittent. But one who merely performs the

---

[13] In its amicus brief, the West Virginia Municipal League identifies itself as a statewide, non-profit, non-partisan, voluntary association of municipal governments, including cities, towns, and villages, established in 1968 to support local governments and advance the interests of the citizens who reside within them. It contends that each of West Virginia's 232 municipalities are members of the Municipal League. Urging the Court to affirm the circuit court order, it asserts that it has an interest in the outcome of this case because the application of the extraordinary process set forth in West Virginia Code § 6-6-7 to the removal of public employees appointed to non-elected positions is contrary to the intent of the legislature, contrary to the role of elected officials in the oversight of appointees serving at the will and pleasure of the governing body or other elected appointing official, and is an impracticable proposition that, if implemented, would place an undue burden on both municipalities and the judiciary. Specifically, it contends that municipalities would be faced with the inevitable choice of either leaving on such boards or commissions non-elected appointed members who are ineffective and/or engaging in misconduct, or pursuing a potentially long, expensive legal process involving the expenditure of public funds and the time and resources of the City Council, prosecuting attorneys, three judge filled by circuit judges from multiple counties, and this Court. It maintains that sanitary board members are subject to substantial oversight by the governing municipal body under West Virginia Code § 16-13-3, and do not have the authority to exercise sovereign power on behalf of the municipality.

duties required of him by persons employing him under an express or implied contract, though such persons themselves be public officers, and though the employment be in or about public work or business, is a mere employee.

*State ex rel. Key v. Bond*, 94 W.Va. 255, 260, 118 S.E. 276, 279 (1923). In *State ex rel. Carson v. Wood*, 154 W. Va. 397, 175 S.E.2d 482 (1970), we considered whether a petitioner was an officer of the State Road Commission or a mere employee for purposes of determining whether he was a person who could be bribed under West Virginia Code § 61-5-5. We announced the following test for determining whether a position is an office or a mere employment:

Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign.

*Carson*, 154 W.Va. at 397, 175 S.E.2d at 483, syl. pt. 5. Subsequently, in *Christopher v. City of Fairmont*, 167 W. Va. 710, 280 S.E.2d 284 (1981), we utilized the factors set forth in *Carson* to determine that a city water transportation and distribution supervisor was a public employee rather than public officer, and thus, not entitled to civil service procedural safeguards. *Id.* at 713, 280 S.E.2d at 286.

Utilizing the criteria established in *Carson* and applied in *Christopher*, the circuit court determined that while the position of sanitary board member is established

19

by law and has a fixed tenure pursuant to West Virginia Code § 16-13-18 and Municipal Code § 17-113, Petitioner fell short of establishing that the position was an "office" and that, in his capacity as a member of the Sanitary Board, he was a town official. We agree.

The circuit court properly determined that Petitioner's position was created by law pursuant to West Virginia Code §§ 16-13-2 and -18 and Municipal Code §17-113 and thus satisfied the first *Carson* factor. Similarly, the circuit court correctly found that the second *Carson* factor was not satisfied because a sanitary board member is not designated as an official in those same statutes or municipal ordinance. We find no statute or ordinance expressly designating this position as a municipal office.[14]

As to the third *Carson* factor, the circuit court expressly found that "[n]either West Virginia Code § 16-13-18 nor Municipal Code § 17-113 prescribe any

_____

[14] As the circuit court properly determined, there are only two references made in West Virginia Code § 16-13-18 regarding an office or officer. The first reference states, "[n]o *officer* or employee of the municipality, whether holding a paid or unpaid office, is eligible for appointment to the sanitary board until at least one year after the expiration of the term of his or her public office." W. Va. Code § 16-13-18(c) (emphasis added). The next reference states that "[t]he vice chairman, secretary and treasurer shall hold *office* at the will of the sanitary board." *Id.* (emphasis added). The latter does not relate to a board member, but rather those offices that exist within the board and are, by statutory directive, selected and controlled internally by the board members themselves. *See* W. Va. Code § 16-13-18(c).

particular requirements or qualifications that must be met for a citizen of the town to be appointed as a member of the sanitary board."[15] On appeal, Petitioner fails to identify what, if any, qualifications for the position have been prescribed. Thus, we find no fault with the circuit court's determination that no qualifications of the appointee have been prescribed.

The fourth factor we must consider is whether the duties, tenure, salary, bond and oath have been prescribed. The circuit court determined that while the general duties of the Sanitary Board and tenure for the position are prescribed by West Virginia Code § 16-13-18, no particular salary, bond, or oath are prescribed or required. The circuit court properly determined that while the subject statutes and ordinance prescribe and outline numerous duties and obligations of the Sanitary Board as a whole, neither the statutes nor the ordinance establish any specific duty or obligation on the part of a

---

[15] The circuit court noted that West Virginia Code § 16-13-18 does establish that, during the initial construction period, at least one appointee "must be a registered professional engineer, except that if a registered professional is under contract for the project, the member of the board is not required to include a registered professional engineer." The circuit court concluded that "as the facts of this case reflect that the sanitary board at issue is not in the construction phase, this qualification or requirement is not relevant to this Court's determination that there are no established qualifications to hold the Petitioner's position on the Sanitary Board. W. Va. Code Ann. § 16-13-18 (West)."

member of the Sanitary Board.[16] Moreover, while Petitioner was sworn in using a formal style oath prior to accepting the position on the Sanitary Board, no such oath was expressly required by statute or ordinance.

With respect to whether a bond was prescribed or required, the circuit court specifically concluded that "while both the operative statute and ordinance reference a bond, the statute does not require a bond and the ordinance specifically waives any requirement for the posting of a bond for the Petitioner's position on the . . . Board." We agree that West Virginia Code § 16-13-18 provides, in pertinent part, that "[e]ach member shall give bond, if any, as required by ordinance," and that Municipal Code § 17-113(3) provides that *"[n]o bond shall be required of the Board members* as such, but the Treasurer, whether a member of the Board or not, shall give bond . . ." (emphasis added). However, Petitioner makes a persuasive argument that because he handled money, he was in fact required to have a bond under West Virginia Code § 6-2-11 and Municipal Code § 17-113(8). As stated above, West Virginia Code § 6-2-11 provides that "[e]very officer or employee of a municipality *who handles public funds or property, . . . shall, unless otherwise provided by law, give bond . . . .*" (emphasis added). Furthermore,

---

[16] For example, pursuant to West Virginia Code § 16-13-18, the "*board* may employee engineers, architects, inspectors, superintendents, managers, collectors, attorneys and other employees as in its judgment may be necessary in the execution of *its powers and duties.* . . ." (emphasis added); *see also* Municipal Code § 17-113(4)(C) (setting forth the same powers and duties of the Board).

22

Municipal Code § 17-113 (8) expressly requires that [t]he Sanitary Board may from time to time, in its discretion, require any of its employees to furnish a good and suitable indemnity bond . . . . The Board shall require all persons *who collect or otherwise handle funds of the Board to furnish a good and proper bond . . .*" (emphasis added). Thus, if Petitioner was required to handle funds or property of the Sanitary Board in his capacity as vice chairman, a bond would in fact be required.

As for whether Petitioner's salary was prescribed or required, the circuit court properly determined that West Virginia Code § 16-13-18(d) does not prescribe a particular salary. The statute provides, in pertinent part, that:

> The members of the sanitary board are entitled to receive compensation for their services, either as a salary or as payments for meetings attended, as the governing body determines, and are entitled to payment for their reasonable expenses incurred in the performance of their duties. The governing body shall fix the reasonable compensation of the secretary and treasurer in its discretion, and shall fix the amounts of bond to be given by the treasurer. All compensation, together with the expenses previously referred to in this section, shall be paid solely from funds provided under the authority of this article. . . .

W. Va. Code § 16-13-18(d). Thus, while Petitioner was required to be compensated by the Sanitary Board for his services, he was not entitled to receive a particular salary under the statute.

23

Finally, we consider the fifth *Carson* requirement, which is whether the one occupying the position has been constituted a representative of the sovereign. The circuit court found:

> [I]t is this Court's opinion that, once a sanitary board is created by a governing body, *i.e.*, the Meadow Bridge Town Council, it operates wholly within the confines of the operative statutes and the town ordinance. At no point has this Court discovered where a member of the Sanitary Board can bind or obligate the Town Council. The opposite is actually evidenced by the subject statutes.[17] A member of the Sanitary Board may very well constitute a representative of the Sanitary Board, but it is this Court's opinion that a Sanitary Board member is not a representative of the Town Council.

We agree with the circuit court's analysis of the applicable statutes and ordinances and conclude that Petitioner has not demonstrated that he served as a representative of the sovereign or the governing body in this case. As Respondents note, the Legislature expressly delegated the municipalities' governing bodies the power to establish "by ordinance" the organization and rules of the municipal sanitary boards. Moreover, West

---

[17] The circuit court stated that for example, under West Virginia Code § 16-13-3,

> [t]he board shall have power to take all steps and proceedings and to make and enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers under this article: Provided, That any contract relating to the financing of the acquisition or construction of any works, or any trust indenture as provided for, *shall be approved by the governing body of the municipality before the same shall be effective*.

(emphasis added).

Virginia Code § 16-13-18(c) expressly provides that the Town Council retained the power to appoint members of the Sanitary Board:

> "The sanitary board shall be composed of either the mayor of the municipality, or the city manager thereof, if the municipality has a city manager form of government, *and two persons appointed by the governing body. . . .*The mayor or city manager shall act as chairman of the sanitary board, which shall elect a vice chairman from its members and designate a secretary and treasurer (but the secretary and the treasurer may be one and the same) who need not be a member or members of the sanitary board. The vice chairman, secretary and treasurer *shall hold office at the will of the sanitary board.*

(emphasis added).

While the Sanitary Board, which retained the authority to remove Petitioner from his position as vice chairman, is authorized to establish bylaws, rules, and regulations regarding its own governance pursuant to West Virginia Code § 16-13-18(d), it did not do so. Since no bylaws or regulations were promulgated by the Sanitary Board regarding its governance or the removal of officers that would displace or supersede the Municipal Code, the provisions related to removal of individuals appointed to the Sanitary Board in Municipal Code § 3-112 necessarily governed the removal of individuals appointed to the Sanitary Board by the Town Council. Accordingly, we conclude that the removal of the Petitioner pursuant to Municipal Code § 3-112 was lawful in this case.

25

In *Town of Davis v. Filler*, 47 W. Va. 413, 25 S.E. 6 (1900), a similar case decided long ago, we stated:

> If a. . . mere appointee of a municipal corporation; I may say, for this purpose, a mere employee, - is to have a fixed tenure for a fixed term, without power in the council to remove him, it would cramp the powers of the town, defeat the performance of some of its essential functions, and be very hurtful to public interests. Public policy overrules that contention. But how as to law? This town exists under chapter 47, Code 1891. Section 15 provides that a superintendent of roads, streets, and alleys shall be appointed by council, "to continue in office during its pleasure." I might stop here, as that settles the controversy; but, if the power of removal were not given by the Code, it would exist, because the power to appoint carries with it as an incident the power to remove, in the absence of constitution or statutory restraint of such power. It is called by the United States Supreme Court, as it is, "a sound and necessary rule." Hennen's Cases, 13 Pet. 230, 10 L. Ed. 138. Much authority sustains it. Mechem, Pub. Off. § 445. "Where the power of appointment is conferred in general terms, without restriction, the power of removal in the discretion and at the will of the appointing power is implied, and always exists, unless restrained and limited by some provision of law." *Trainor v. Board* (Mich.) 15 L. R. A. 95, note (s. c. 50 N. W. 809).
>
> . . . .
>
> It would be a costly consumption of time and money to require a council to have an impeachment trial over its mere appointees, who are not officers in the legal sense, but mere employees, as shown in *Trainor v. Board* (Mich.) 50 N. W. 809, 15 L. R. A. 97.

*Id.* at 413, 35 S.E. at 7. Echoing these same concerns, the circuit court in this case aptly noted:

26

It is difficult for this Court to fathom the slippery slope that we may embark upon by extending the rather comprehensive and substantial protections of § 6-6-7 to various members of county and municipal boards, committees, commissions, and authorities. Simply put, undue time and resources would be expended across this State by counties and municipalities, prosecutors and attorney generals, and multiple members of the judiciary, at a time in our history where those resources are more valuable, and spread thinner, than ever before.

The decision to develop various boards, committees, commissions and authorities to help the governing body promote the best interests of its citizens, and the subsequent decision to appoint members to serve thereon, will become a lengthy, detailed process, as once the decision is made it cannot be simply undone. Likewise, a decision to seek removal may be delayed or thwarted due to a possible lack or resources inherently necessary to prosecute the removal action and there may be an observed hesitancy to proceed without a significantly substantiated cause.

The decision of an electorally checked and regulated governing body will be replaced by the yoke and bridle; the oversight and involvement of the executive branch as well as the already overburdened judicial system. The courts, rather than the electorate, will become the overseers shackled with the task of confirming the decisions of the governing body.

. . . .

[e]xtending such a heightened level of a protection to a member of a sanitary board is, comparatively speaking, akin to placing an elevator in an outhouse or killing a gnat with a gun; providing this level of protection [(the protections afforded by West Virginia Code § 6-6-7)], and expending this level of resources and time, for the removal of a sanitary board member, simply does not fit. . . .

27

For all these reasons, we conclude that a municipal sanitary board member does not hold a municipal office and thus is not a municipal officer protected by West Virginia Code § 6-6-7 in the event of involuntary removal.[18]  Because Petitioner has failed to establish that his position as a member of the Sanitary Board was a municipal office, he has no clear legal right to the relief he demands.

## IV. CONCLUSION

Accordingly, we affirm the March 1, 2016, order of the Circuit Court of Fayette County denying Petitioner's request for relief and dismissing his petition for a writ of mandamus.

Affirmed.

---

[18] Because we reach this conclusion, Petitioner's remaining assignments of error, which are premised on his contention that he was a municipal officer, need not be addressed.

28